State v. Riggs.

THE STATE vs. LUTHER G. RIGGS.

In a prosecution for libel, evidence of other libelous publications of the defend-
ant against the same person are admissible to show malice in the publication
charged.

But such evidence is not admissible for the purpose of proving the fact of the
publication charged.

Where the judge instructed the jury that such evidence, introduced for the
purpose of proving malice, might yet be considered by them in determining
whether the defendant was guilty of the publication charged, it was held to
be error, and a new trial was granted.

INFORMATION for a libel, brought to the police court of the
city of Meriden, which court found probable cause and bound
the defendant over to the Superior Court for the county of
New Haven. In the latter court the case was tried to the
jury, upon the plea of not guilty, before *Carpenter*, *J.*

The libel was upon one Charles Parker, and was charged
to have been published in a weekly newspaper called the
" Meriden Literary Recorder," of which the defendant was
editor and publisher. The paper was dated February 16th,
1871.

On the trial the attorney for the state introduced in evi-
dence a copy of the newspaper in question containing the
article claimed to be libelous, with proof that the defendant
had been for many years, and still was at the time of the
publication, its sole or principal editor and publisher. The
attorney also offered in evidence a copy of the " Daily Recor-
der Journal", a daily paper published in the city of Meriden,
dated February 13th, 1871, which contained the same article,
with proof that the defendant was at the time, and for a long
time had been, its sole or principal editor and publisher.
To the admission of this paper in evidence the defendant ob-
jected, but the court admitted it. The attorney also offered
in evidence, for the purpose of showing malice on the part of
the defendant in the publication of the article claimed to be
libelous, sundry copies of the Daily Recorder Journal, dated

respectively, November 11, 1869, and February 9th, 10th, and 22d, 1871, containing libels of the same general character, and upon the same person, with the libel charged. To the admission of this evidence the defendant objected, the objection being taken to each separate number and article, but the court admitted it for the sole purpose of showing malice in the publication charged.

The defendant testified in his own behalf that he did not write or authorize the publication of the libel, and knew nothing about its publication until after his arrest upon the present prosecution; and introduced other evidence tending to show that it was written and printed by one Conner, a person in his employment, without his knowledge.

The defendant filed a written request that the court would give the jury sundry instructions, none of which in the view of the case taken by this court are important except the following: " That the evidence of other articles reflecting on Mr. Parker, published in the Recorder from time to time, had been admitted solely for the purpose of proving that, if Mr. Riggs printed or published the article which he is prosecuted for, he published it *maliciously*. That the jury must be careful to exclude the publication of such other articles entirely from their minds, in determining whether the defendant published or wrote this particular article set forth in the information. That unless this point was first determined adversely to the defendant, the jury had no concern with the other articles and could not consider them at all."

Upon this point the court charged the jury as follows:

" This request is correct in its application to the question of malice alone, that is to say, the question of malice is immaterial in case you find that the article was published under such circumstances as that the defendant is not criminally liable. But the articles referred to show the *animus* of the defendant, and in the opinion of the court the *animus* bears directly with more or less force upon the question of fact, whether the defendant caused the publication of the article, in this, that a person in the state of mind indicated by these

State *v.* Riggs.

articles would be more likely to publish, or cause the publication of, the article in question than one who was friendly to Mr. Parker. And in weighing the evidence, it seems to me that it is legitimate and proper for you to keep. this fact in mind."

The court further charged the jury that if they should find that the defendant wrote and distributed, or knowingly and intentionally caused the printing and distribution of, the article in question, the offense was complete, so far as this part of the case was concerned; but that if they should find that the article was inserted without the knowledge and without the authority of the accused, he could not be convicted. The court further remarked that, while the defendant had testified that he had nothing to do with the publication of the libel, and did not know of its publication until after his arrest upon the present prosecution, they should bear in mind that he was the party accused and liable to both fine and imprisonment if convicted; that it was only by virtue of a recent statute that he was allowed to testify in his own behalf; and that this statute did not make him a full witness, or entitled to the credit of an ordinary witness, although it allowed him to state his version of the transaction, and the jury to hear and consider it.

The jury returned a verdict of guilty, and the defendant moved for a new trial for error in the rulings and charge of the court.

*Baldwin,* in support of the motion.

1. The Daily Recorder Journal, of February 13th, 1871, was inadmissible, unless for the purpose of proving malice. We submit that neither this, nor the other issues of the same paper that were introduced, were legitimate evidence for that purpose. These issues were of the dates of Nov. 11th, 1869, Feb. 9th, 1871, Feb. 10th, 1871, and Feb. 22d, 1871; and specific objection was made to the admission of each, and of each of the articles read from each. We claim that, on an indictment for libel, evidence of other libels can only be in-

troduced, either when they refer to the one in question, or when on the face of the article, which is the subject of the prosecution, it is doubtful whether it was published maliciously. In this case, the libel of February 16th, 1871, is on its face, if false, a gross and malicious libel. Evidence in chief to show its malice, being therefore unnecessary, was inadmissible, *Finnerty* v. *Tipper*, 2 Campb., 72 ; *Mix* v. *Woodward*, 12 Conn., 291, 293. Nor was it competent for the state to show that the defendant was actuated by malice towards Mr. Parker on February 16th, 1871, by evidence that he entertained such malice November 11th, 1869, two years before. This prosecution was commenced February 20th, 1871. It was therefore clearly not competent for the state to introduce the Journal of February 22d, 1871. *Mix* v. *Woodward*, supra.

2. In admitting in certain cases evidence of other libels to prove malice, courts have gone to the verge of the law. But the court below, after admitting such evidence *solely for the purpose of proving malice*, told the jury in the final charge, that it was proper for them to consider it, as showing that the defendant was in a state of mind unfriendly to Mr. Parker, and was therefore more likely to be the author of the libel in question. In a word, this was telling the jury that proof that the defendant had published a libel on Mr. Parker, before or after that prosecuted on, was competent evidence that he published the latter. If so, then proof that a man assaulted another on one day is competent evidence to show that he assaulted him on the next day. Arch. Crim. Pl., 68 ; 1 Greenl. Ev., §§ 52, 53 ; *State* v. *Bates*, 10 Conn., 373 ; *Commonwealth* v. *Horton*, 2 Gray, 354 ; *Edwards* v. *Warner*, 35 Conn., 519 ; *Mix* v. *Woodward*, 12 id., 292, 293 ; *Swift* v. *Dickerman*, 31 id., 289. But even if the charge on this point were justifiable as matter of law, it was not justifiable under the circumstances of the case. The evidence as to the other publications having been offered and admitted solely for the purpose of proving malice, it was a surprise to the defendant for the court to give it to the jury at the last moment for a

new purpose, to prove not the *intent* but the *fact* of publication. Had we supposed the evidence would or could be used for such a purpose, we might have taken more pains to disprove it.

*W. C. Robinson* and *Lounsbury*, contra, contended that proof of other libels by the defendant upon the same person and of the same general character were clearly admissible to show the malice of the defendant; (citing 3 Greenl. Ev., § 168; *Barwell* v. *Adkins*, 1 Mann. & Grang., 807; *Williams* v. *Miner*, 18 Conn., 472; *Swift* v. *Dickerman*, 31 id., 290; 2 Russell on Crimes, 777, 778; 1 Archb. Crim. Law, 120, 392; 2 Stark. Ev., 635;) and that such malice was in itself evidence to show that the defendant did the act the malicious character of which was proved, upon the same principle upon which threats and other hostile demonstrations are admissible to prove that certain acts charged, and which were in accord ance with such threats, were done by the person making the threats.

Foster, J.   There is certainly nothing in the character of the offence of which the defendant has been found guilty, that commends this case to especial favor.   The tone of the public press and of the public conversation might lead a stranger to our institutions to suppose that we had no law against slander.   Such an opinion would be a mistaken one.   The slanderer is legally a criminal; and though not subject to the punishment said to have been prescribed by a law of the ancient Lydians, by which the publishers of slander were to be let blood in the tongue, and the listeners in the ear, still, a slanderer may, when duly convicted, be made to suffer severe penalties.

The motion before us suggests various grounds on which it is claimed that the accused has not been duly convicted. There are but two questions which have occasioned us any doubts: that of variance, and the instruction given by the court as to the use the jury might make of other libels, which were received in evidence, besides the one which the defend-

ant was prosecuted for having published. As the view we take of this latter question is decisive of this case, we shall say nothing on the subject of variance. The newspaper articles, in addition to the one on which the prosecution was founded, were offered in evidence by the state solely for the purpose of proving malice. The defendant objected to their admission, but the objection was overruled, and correctly. They were clearly admissible to prove malice. Thus far there is no difficulty. The court, however, instructed the jury that "the articles referred to show the *animus* of the defendant, and in the opinion of the court the *animus* bears directly, with more or less force, upon the question of fact, whether the defendant caused the publication of the article, in this, that a person in the state of mind indicated by these articles would be more likely to publish, or cause the publication of, the article in question, than one who was friendly to Mr. Parker. And in weighing the evidence, it seems to me that it is legitimate and proper for you to keep this fact in mind." We cannot give our assent to this doctrine. It seems to us in conflict with various sound and well established principles. Admitting these newspaper articles for the purpose of proving malice, cannot make them, after such admission, any legitimate evidence as to the fact of publishing the libel in question. That must be proved, satisfactorily, from other sources, and the responsibility of it fixed on the defendant; otherwise, the question of malice is quite unimportant. To allow the jury to infer the act of publishing the libel from other articles which show its malicious intent, tends pretty directly to the proposition, which no one would sustain, that a party may be found guilty of one crime by showing that he committed another.

A new trial is advised.

In this opinion PARK, J., concurred.

SEYMOUR, J., was inclined to the opinion that the exclusion of evidence of collateral matter, as here of the publication of other libels than the one charged, was on the ground of

policy rather than of irrelevancy, because it would raise collateral issues and might render a trial interminable ; but that, where such collateral matter was admissible for the purpose of showing malice, as it clearly was in the present case, it could then be properly used as evidence of the publication of the libel charged, precisely as threats would be pertinent and admissible for the purpose of proving both an act charged and the malice of the act. If admissible at all, the evidence could of course be met by opposing evidence, thus raising a collateral issue, and producing the particular inconvenience sought to be avoided by the general rule ; and that inconvenience having been produced, there would seem to be no reason why the evidence should not have the full effect which it would be entitled to, and which it was prevented from having only by the policy which deemed its exclusion necessary on grounds of convenience. But the question arising as it does in a criminal prosecution he was not inclined to enter a formal dissent from the opinion of his brethren.

CARPENTER, J., having tried the case in the court below, did not sit.