ALLAN L. McDERMOTT v. THE EVENING JOURNAL ASSOCIATION.

1. An action for libel will lie against a corporation.
2. The publication of a statement made by a justice of what had been said by persons applying to him for a warrant, which statements do not appear in any affidavit nor were made as part of a hearing, are not privileged.
3. Separate publications made concerning the plaintiff, which are not themselves actionable, are admissible in an action for libel.
4. If they are actionable, it seems that they are still admissible whenever the question of malice in fact is to be left to the jury.

---

This action was brought against a corporation publishing "The Evening Journal," a newspaper published in Jersey City, to recover damages resulting from the publication of an alleged libelous article concerning the plaintiff.

The record brought up by this writ of error contains a judgment upon a verdict taken at the Hudson Circuit, with certain exceptions sealed at the trial.

Argued at June Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, KNAPP and REED.

For the plaintiff in error, *G. Collins.*

*A. L. McDermott, in pro. pers.*

The opinion of the court was delivered by

REED, J.  Upon the close of the plaintiff's case at the Cir-

cuit, a motion was made that the plaintiff be non-suit, which motion was overruled.

To this refusal an exception is sealed, and upon it error is assigned. The points presented below and again here, upon which the non-suit was moved, were three: First, that the article published was not libelous; second, that it was the proceedings of a court and privileged, and third, a corporation is not responsible in an action for a libelous publication.

As to the first point, the article was clearly libelous. It charged that the plaintiff, an attorney-at-law, went with others to a silk factory to search for stolen goods, and while there falsely personated a constable and read a warrant, which, as constable, he pretended to execute. A more disgraceful proceeding could with difficulty be charged, and it needs no statement of the elements of a libel to perceive at once that this article was libelous.

The second point taken is grounded upon the rule that reports of judicial proceedings are privileged.

It is true that fair reports of the proceedings taken in a court, published without material addition or suppression of facts, are entitled to this privilege. The advantage to the public arising from the publicity of such proceedings is so great that the occasional inconvenience of the citizen must yield to the general good. *Curry* v. *Walter*, 1 *Bos. & Pul.* 525; *Wason* v. *Walter*, 38 *L J. Q. B.* 34.

The publication now in question purported to be the particulars of a complaint made *ex parte* before a justice of the peace, for the purpose of obtaining a warrant against the parties who made the search for stolen goods. No warrant was issued nor any subsequent action taken against the plaintiff.

Whether a published account of an *ex parte* proceeding which is preliminary to an investigation still unfinished, is privileged, has been the subject of much judicial discussion and ruling. The weight of authority in the English courts is against the privilege whenever the matter is still pending in any shape. The reason assigned is that such publications

tend to a prejudgment of the case and a poisoning of the sources of justice. *Starkie on Libel* 189, 191.

Lord Cockburn, however, in the case of *Wason* v. *Walter*, *supra*, said *obiter*, that another test might be applied to such publications to determine their character, namely, whether it was an honest report of what had taken place, published simply with a view to the information of the public, and innocent of an intention to do an injury to the reputation of the person affected.

Whenever an *ex parte* proceeding has terminated either by a failure to arrest or by a discharge of the defendant and there is an end of the prosecution, and so no injury can arise from its tendency to prejudge the cause, the publication seems to be privileged. *Lewis* v. *Levy, E., B. & E.* 37.

The difficulty in the present case exists in the fact that it is impossible to bring the present publication within this principle. It was not a report of even an *ex parte* proceeding. The only parts of the proceeding appearing, namely, the affidavit and warrant, do not even mention the name of the plaintiff. The article was written up from loose statements made by the justice to the reporter of what had previously been said by certain persons in his office, not under oath, and no more a part of any judicial proceeding than is the talk of a crowd around the door of a court-house discussing the merits of a case on trial within.

The third point raised a fundamental objection, as it challenged the right of any person to bring an action for libel against a corporation.

This view is not without considerable judicial support. There was an early impression that inasmuch as malice was an element in every libel, and as it was thought that a corporation was an entity without mind, so no bad mind or malice could be attributed to a corporate body. This was the view taken by Baron Alderson in the case of *Stevens* v. *Midland Counties Railway Co.*, 10 *Exch.* 352, a case decided as late as the year 1854. It was an action for malicious prosecution.

The same view was taken by some of the courts in this

country.    In the case of *Childs* v. *Bank of the State of Missouri*, 17 *Mo.* 213, decided in 1852, it was held that an action for malicious prosecution would not lie against a corporation, because it was incapable of malice.

In the case of *Owsley* v. *Montgomery and West Point R. R. Co.*, 37 *Ala.* 560, decided in 1861, it was held that while an action for false imprisonment would, an action for malicious prosecution would not, lie against a corporation.

The distinction was drawn between acts creating liability without regard to motive, and conduct, which, without motive, creates no liability.

The expressions in the opinions in these cases exhibit the strength of the sentiment against the possibility of holding a corporation responsible in any action in which malice was an element.

I do not think that this view has the countenance of the correct application of legal rules or is now supported by the weight of authority.   The great and increasing space filled by corporations in our present commercial and industrial life ; the fact that they enter into contracts and become tort-feasors, that they transact business for profit in like manner as natural persons, makes it seem desirable that they should, like natural persons, answer for their acts.   An individual who publishes a newspaper and libels another, must respond.   Why should not a corporation, with the power conferred by an aggregation of capital and energy, be equally responsible?   Certainly the reasons for a discrimination in favor of the latter should be substantial, not technical.

I think that there is no reason why there should exist any immunity for corporations for malicious torts.   For all torts not malicious, it is held, by a uniform line of cases, I think, without a single exception, that a corporation is responsible. *Add. on Torts* 1117 ; *Cooley on Torts* 119.

The reason assigned, in some cases, as I have already observed, for the exception of malicious torts from the general rule, is, that a corporation has no soul or mind.   But it is

obvious that mind, in its legal sense, means only the ability to will, to direct, to permit, or assent.

A corporation exerts its mind each time that it assents to the terms of the contract.

It is true that the corporate mind must gain expression in accordance with the method provided by its charter, and must be exercised upon a matter within the range of its corporate authority. It is equally true that it must act through the intervention of agents; but if the agent's act is induced by a direction given by the corporate will, either by a direct order to do the act, or an order to do some other act which comprises in its execution the doing of the act, then the corporation is answerable in the same manner that any other principal, under like conditions, is responsible for the acts of his servant.

The corporation is considered as a principal, and its responsibility for the torts of its servant is the responsibility imposed upon every master for similar acts. The line dividing the class of torts which does, from the class which does not, burden the principal with a responsibility for their results, is drawn by Judge Cooley, in his work on Torts, p. 120, and by Mr. Justice Depue, in his opinion in the case of *Brokaw* v. *N. J. R. R. and Trans. Co.*, 3 *Vroom* 328.

The only matter which concerns us at present, is the fact that this responsibility of corporations to answer for the torts of their servants does exist. In view of such responsibility, if we consider the law of libel in one of its phases at least, it is impossible to suggest a reason why a corporation as principal should not answer for the publication of a libel by its agent. I allude to the class of libels in which the existence of malice is legally implied. This class includes all such injurious publications as are not privileged, and for which no excuse or justification can be shown by the defendant. The term malice, as applied to this class of libels, means simply an intent to do the wrongful act without legal excuse. No state of mind need be shown in the trial except a mind which directly or indirectly ordered the act which is injurious; and

this is the ground, and the sole ground, upon which the liability of a corporation to answer for other torts rests.

Upon the principle of *respondeat superior*, an individual master is responsible for the libelous acts of his servant, committed while acting in the line of his employment, although the master was entirely ignorant, in fact, of his servant's act. Here the law imputes to the principal the intent of the agent to do the act, and from the intent raises the implication of malice. In this instance, the liability of the master seems to arise from his negligence in the selection of his servant, and motive has no influence upon the presence or absence of responsibility.

Admitting, then, the responsibility of corporations for the acts of nonfeasance and misfeasance of their servants, it seems impossible to discriminate between this character of libelous publication, where malice is a legal inference, and any other tort. This conclusion has the sanction of judicial recognition in the case of *Whitfield* v. *S. E. Railway Co., E., B. & E.* 115. As already appears, the libel, for damages for the publication of which the present action is brought, is within this class of libels, there being no legal justification, and malice is legally implied from the fact of its publication.

I am convinced, however, that the responsibility of corporations is not limited to a publication of this class of libels. If it were essential to prove express malice, I do not see why a corporation cannot be fixed with a malicious intent in the same manner as any other principal. If the corporation has the mind to order a wrongful act so as to incur responsibility, I think it is possible for it to have knowledge that the act is illegal, and that it will injure another ; and that will constitute malice.

In the case of *Whitfield* v. *S. E. Railway Co., supra,* Lord Campbell expressed a strong conviction that express malice could be proven against a corporation. In a later case, the question directly arose in an action against a corporation for wrongfully and maliciously placing and running their stages so as to obstruct and interfere with those of the

plaintiff. It was held that the action was well laid against the company. *Green* v. *London General Omnibus Co.*, 7 *C. B. (N. S.)* 290.

But the question whether malice can be proven against a corporation, in this state, is at rest in this court, since the decision in the case of *Vance* v. *Erie R. R. Co.*, 3 *Vroom* 334. It was an action for malicious prosecution—an action in which the showing of express malice is part of the plaintiff's case. It was held that the action would lie.

I do not perceive that there was error in the refusal of the court to non-suit.

Another error assigned is, that the trial judge admitted other articles published previously to the one in suit, which criticised unfavorably the appointment of the plaintiff to the office of corporation attorney of Jersey City. It is contended that the admission of these articles was erroneous, under a rule enunciated by many courts, that proof of distinct slanders and libels cannot be shown, because it is impossible to prevent a jury from assessing damages, not only for the one in suit, but for all proven. *Frazier* v. *McCloskey*, 60 *N. Y.* 337 ; *Bodwell* v. *Swan*, 3 *Pick.* 376 ; *Leonard* v. *Pope*, 27 *Mich.* 145.

The rule as stated, has not received the uniform approval of the courts of this country. *State* v. *Riggs*, 39 *Conn.* 498 ; *Stearns* v. *Cox*, 17 *Ohio* 590.

In England there was, for a time, a tendency toward the exclusion of all separate libels in all cases. *Defries* v. *Davis*, 7 *C. & P.* 112.

But whenever the presence of express malice is involved in the cause, the rule is now stated to be that separate libels are provable as showing the malicious motive of the defendant. *Pearson* v. *Lemaitre*, 5 *M. & G.* 700 ; *Barrett* v. *Long*, 3 *H. L. Cas.* 395.

The jury should be told that they must not give damages for such separate libels or slanders, because they might be the subject matter of a separate action. But the omission of the

judge to give such a caution is not misdirection.  *Darby* v. *Ousely*, 1 *H. & N.* 1.

Mr. Odgers, in his concise digest of the law of libel and slander, states the rule in the English courts now to be this: Whenever the intention of the defendant is equivocal; whenever the question of malice or *bona fides* is properly about to be left to the jury, evidence of any previous or subsequent libel is admissible. But it is perceived that the rule which excludes, in any event, rests upon the ground that they may be the subjects of separate actions. Whenever, therefore, the separate publications are not actionable, the rule is inoperative. This was the character of the separate articles admitted in this case. They contained observations upon an appointment to a public office, which observations were within the limit of legitimate criticism.

I find no error in the record, and the judgment is affirmed, with costs.