JOHN F. WYNNE *vs.* MARTIN L. PARSONS.

Hartford Dist., May T., 1888.  PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

Gen. Statutes, § 1116, provides that in every action of libel the defendant
may give proof of intention, and that if the plaintiff does not prove
either *malice in fact* or a refusal on request to retract, he shall recover
only such actual damage as he may have specially alleged and proved.
Held that the "malice in fact" here intended is not malignity or per-
sonal ill-will, but an improper and unjustifiable motive.

An intention to amuse the public and to stir up the plaintiff to pay a debt,
is an improper and unjustifiable motive.

The rule that a man is presumed to intend the natural consequences of his
acts, is applicable to the act of publishing a libel.

In estimating vindictive damages the jury may take into consideration
the plaintiff's counsel fees in the case.

[Argued June 4th—decided July 20th, 1888.]

ACTION for a libel; brought to the Superior Court in
Hartford County, and tried to the jury before *Torrance, J.*
Verdict for the plaintiff, and appeal by the defendant for
error in the charge of the court. The case is fully stated
in the opinion.

*W. C. Case* and *T. M. Maltbie*, for the appellant.

1. Under the statute (Gen. Statutes, § 1116) it was ne-
cessary for the plaintiff to prove "malice in fact." The
statute provides that the defendant may "prove his inten-
tion." His intention is thus put in issue, with the burden on
the plaintiff of proving it to be malicious. And the jury
must find this malicious intent, not from the mere fact that
the publication is false but from the evidence. "A false
publication is not, of course, libelous, as it was before the
statute except in certain privileged communications, but
there must be evidence that the person making an untrue
publication, is actuated by improper and unjustifiable mo-
tives. * * * This fact can be proved by any proper evidence,
direct or circumstantial, such as threats or other language

indicative of ill-will or an intent or desire to injure, or by conduct evincive of similar feelings or motives." *Moore* v. *Stevenson*, 27 Conn., 14. But the fact must be proved and from the circumstances the jury must find as a fact that the malice existed.

2. The jury must have been misled by what the judge said as to a man intending the natural consequences of his act. The court had been instructing the jury in regard to the motive of the defendant in publishing the article in question, and on that point said: " If a man publishes defamatory words of another and they are false and made without lawful occasion or excuse, the publisher is responsible even if he did not intend to injure the other. A sane man is presumed to intend the natural and necessary consequences of his acts whether that act be a publication or any other act." Used in this connection, the jury must have inferred that if the defendant published the article complained of, the law would presume that he intended to injure the plaintiff and that he published it with an unjustifiable motive, and that the only question they need pass upon was whether the defendant published the article, and all the other matters which would entitle the plaintiff to recover would follow as a matter of course under the law, without any proof of malice or without taking into consideration the defendant's intention. It is very clear that if the defendant can give proof of his intention it must be for some purpose, and the evidence of his intention must be taken into consideration by the jury.

3. There was no claim of special damage in the case, and therefore, without the proof of malice in fact, there could be no recovery of any damages. The statute provides expressly that " unless the plaintiff shall prove malice in fact, he shall recover nothing but such actual damage as he may have specially alleged and proved."

4. The court erred in charging the jury that in estimating the vindictive damages they might take into account the plaintiff's counsel fees. *Hicks* v. *Foster*, 13 Barb., 663.

*G. G. Sill* and *J. P. Andrews*, for the appellee.

LOOMIS, J.   This is a complaint for a libel written and published by the defendant in a newspaper, as follows :—

"A FABLE.   A certain pompous toad whose own estimate of himself was greatly in excess of his true value, imagined himself a lawyer, and, procuring a bondsman, got himself appointed by the court of probate administrator on a certain estate, but desiring to build a pedestal to raise himself to greater political distinction, he spent the money of the estate for one of straw which was totally inadequate to support so great a statue ; the result being his inability to pay up the allowances of the court.   The result was his bondsman had to be notified and the dishonest toad had to be debarred from the practice of his profession.

"MORAL.   A toad will be a toad in spite of his croakings, and notwithstanding his surroundings."

No claim was made, and none could well be made, that this article, if it referred to the plaintiff as a lawyer, did not constitute a libel *per se.*

Under instructions from the court, conceded to have been proper in this respect, the jury have found that the article referred to was written and published by the defendant of and concerning the plaintiff as a lawyer, and that it was false.   There was no attempt on the trial to show that the charges were true and no justification was offered.   The defendant's contention seems to have had for its main object the elimination of the element of malice,· and thereby to prevent the plaintiff, under the statute, from recovering any general damages.   The jury returned a verdict in favor òf the plaintiff to recover eleven hundred dollars damages. The defendant's appeal to this court is based on alleged errors in the charge of the court to the jury in three particulars, namely,—in respect to malice ; in respect to the presumption that the defendant intended the natural and necessary consequences of the charges he made ; and in respect to the damages to be recovered.

1. The first question is, whether the court erred in refus-

ing to charge as requested by the defendant, that "upon the facts as they appear in evidence there can be no recovery unless the jury find that the publication was made with the willful intention to inflict injury upon the character and business of the plaintiff; in other words, was made with actual malice."

The finding shows that "the facts as they appeared in evidence" did strongly tend to show that the publication was made with a willful intention to injure the plaintiff. Of course the request did not refer to such evidence, but to some other facts not stated in the request, and we know by the argument in this court that reference was made to facts showing that the case was brought under the provisions of a statute passed in 1855, now constituting section 1116 of the General Statutes, which is as follows:—"In every action for libel the defendant may give proof of intention, and unless the plaintiff shall prove either malice in fact, or that the defendant, after having been requested by him in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved."

In this case no special damages were alleged or proved, and no request is shown to have been made of the defendant to retract the libelous charge. It was therefore incumbent upon the plaintiff, as the request assumes, to show malice in fact within the meaning of the statute, as a prerequisite to the recovery of general damages.

But the request was not content with a charge that the plaintiff must prove "malice in fact" within the terms of the statute, but it required the court to give a particular construction to these words, as meaning that "the publication must be made with the willful intention to inflict injury upon the character and business of the plaintiff." These words are given as the equivalent of the words "actual malice." The question then before us for review is, whether the words "malice in fact," as used in the statute, mean willful intention to injure the person referred to or his

business. If such is the meaning the charge was erroneous, for it was not adopted.

Were this question an open one, the claim might strike one, at first blush, as very plausible, that the phrase "malice in fact" was used in contra-distinction to malice implied or malice in law, and that the former might therefore require actual proof of personal ill-will and hatred. But the question is not an open one, but was put to rest thirty years ago by the decision in *Moore* v. *Stevenson*, 27 Conn., 14, and distinctly re-affirmed four years later in *Hotchkiss* v. *Porter*, 30 Conn., 414.

The first case, like this, was an action for libel, where the same phrase, in identically the same statute, was before the court for construction, and the question there, as here, was, what was meant by the requirement that the plaintiff must prove "malice in fact" in order to recover general damages. The trial judge in the Superior Court charged the jury as follows (p. 19),—that "in regard to her" (the plaintiff's) "general damages the plaintiff was not entitled to recover anything unless, besides the proof of the publication and its falsity, she had also proved that the defendant was in fact actuated by malicious motives in making it; that the term 'malice' did not necessarily import malignity, spite or hatred towards the particular individual affected by the act in question, but only that the party doing it was actuated by improper and unjustifiable motives; that the existence of malice in fact must be found by the jury, but might be proved by any legal evidence, direct or circumstantial." In reviewing this charge this court, ELLSWORTH, J., giving the opinion, after quoting the statute, said (p. 26): "The defendant claims that the statute is to be so construed as to justify any and every publication, whether in a newspaper, letter, circular, advertisement or other writing, however false and generally injurious, if the author or writer believes what he says, and the plaintiff cannot prove actual malice as distinguished from legal malice, that is, such malice as is inferred from the libel being untrue; or, in other words, unless the plaintiff can prove personal pique, ill-will and

hatred on the part of the defendant towards the plaintiff. To this broad claim we cannot give our assent." Then on page 28 it is added:—"We have said we approve of the views expressed by the court below upon the true meaning of the statute. In the charge it is said that a false publication is not of course libelous, as it was before the statute except in certain privileged communications, but there must be evidence that the person making an untrue publication is actuated by improper and unjustifiable motives, and that this view will satisfy the words of the statute without there being malignity, spite or hatred towards the particular person injured. The court held that the jury must be satisfied that the publication was induced by improper and unjustifiable motives and that this fact might be proved by any proper evidence, direct or circumstantial."

In *Hotchkiss* v. *Porter, supra,* the doctrine of *Moore* v. *Stevenson* was distinctly affirmed. The court, BUTLER, J., giving the opinion, says (on p. 421):—" The phrase '*malice in fact*' is a technical one, and, as the common law stood before the passage of the act of 1855, did not mean malignity, spite or hatred, but an improper and unjustifiable motive; and such the court held was its meaning in the law in question. And they further held that all that the legislature had said thereby, or could constitutionally say, was that the defendant in all cases might prove that his motives were proper and justifiable, within the well settled principles of the common law, and that the plaintiff, in order to the recovery of general damages, should show, by other evidence than mere legal presumption from the fact of publication, that the motives of the defendant were not proper and justifiable. * * * By that decision it was settled that under the act the right of the plaintiff to recover general damages shall not depend on the mere legal presumption of improper and unjustifiable motive, derived from the fact of publishing that which is untrue, but upon the question whether such improper and unjustifiable motive has been proved or disproved as a matter of fact by the evidence adduced for that purpose on the trial; that the legislature did not intend to prescribe any

new rule as to the kind or degree of malice, or as to the character or kind of evidence by which the existence of improper and unjustifiable motive should be proved; that all that they intended was, that the fact of improper and unjustifiable motive should appear in proof, and not be presumed; but whether in proof from the character of the libel, the *res gestæ* or circumstances attending its preparation and publication, or from evidence of other facts tending to show the real motive of the publisher, they did not intend to say."

In the construction of a statute law of this state it is not to be expected, and is not at all important, that we find any support from the decisions of the courts of other states, but as the case of *Gott* v. *Pulsifer*, 122 Mass., 235, recognizes the principle laid down in our own cases, we will make a brief reference to it. It was an action for a libel in publishing in a Boston newspaper a false and malicious statement, not concerning the plaintiff, but concerning his property, in the shape of the famous " Cardiff Giant," so called. In order to support an action for such a libel not only special damage was required to be alleged and proved but " actual malice." GRAY, C. J., in giving the opinion of the court said : " But in order to constitute such malice, it is not necessary that there should be direct proof of an intention to injure the value of the property ; such an intention may be inferred •by the jury from false statements exceeding the limit of fair and reasonable criticism and recklessly uttered in disregard of the rights of those who might be affected by them. Malice in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him. * * * The only definition of malice given by the learned judge who presided at the trial, was therefore erroneous, because it required the plaintiff to prove ' a disposition wilfully and purposely to injure the value of this statue,' as well as ' wanton disregard of the interests of the owner.' The jury upon the evidence before them, and under the instructions given

them, may have been of opinion that the defendants' statements that the plaintiff's statue was an 'ingenious humbug,' 'a sell,' and 'a fraud,' were false, reckless and unjustifiable, and had the effect of injuring the plaintiff's property, and caused him special damage; and may have returned their verdict for the defendants solely because they were not convinced that they intended such injury."

In the case at bar the charge of the court to the jury as to the malice which is required to maintain the suit, was in perfect accord with the decisions of this court in the two cases referred to. The judge said to the jury—"As I had occasion to tell you the other day, some of you who were on the panel, malice in the law of libel, and in this connection, does not necessarily mean ill-will, hatred, or other feeling existing in the mind of one person towards another; it means simply a wrong, improper and unjustifiable motive for the publication. If the publication was made partly to amuse the public and partly to stir the plaintiff up to pay a debt which the defendant supposed to be due to the town, as testified to by the defendant, this would not be a proper and justifiable motive for telling lies about a man, even if he had no ill-will or hatred or other evil feelings against this plaintiff."

2. The next question is, whether it was error to charge the jury in the connection that he did, that "a sane man is presumed to intend the natural consequences of his acts, whether that act be a publication or any other act." It is admitted by the counsel for the defendant that the proposition is correct, and the only complaint is that it was announced in such a connection as to mislead the jury and lead them to think they had only one question to pass upon. The argument is thus stated in the brief for the defendant:—"The jury must have inferred that if the defendant published the article complained of, the law would presume that he intended to injure the plaintiff and that he published it with an unjustifiable motive, and that the only question they need pass upon was whether the defendant published the article, and all the other matters which would

entitle the plaintiff to recover would follow as a matter of course under the law, without any proof of malice or without taking into consideration the defendant's intention, concerning which the statute says 'the defendant may give proof.' If the defendant can give proof of his intention it must be for some purpose, and the evidence of his intention must be taken into consideration by the jury. But the court ignored this provision of the statute, and by the use of the language complained of allowed the jury to infer that the mere publication was all they need take into consideration, and that if they found the publication by the defendant they might give the plaintiff the damages which followed the publication, whatever the defendant's motives or intention might have been at the time of the publication, and that proof of the publication proved the intent also."

A fuller statement of the charge will, we think, refute this claim completely. After defining malice as stated, and after some general remarks, the charge continued as follows:—
"If a man publishes defamatory words of another, and they are false and made without lawful occasion or excuse, the publisher is responsible, even if he did not intend to injure the other. A sane man is presumed to intend the natural and necessary consequences of his acts, whether that act be a publication or any other act.

"This question of malice, gentlemen, is one of fact, to be determined by you from all the evidence in the case. In determining it, you ought to take into account all the facts and circumstances that are proved here bearing upon this matter, including the evidence of the intention of the defendant. He has testified, as he may do under the law, as to what his intention was, and you ought to take that into account in passing upon this question of malice.

"The plaintiff claims that not only the motive of the defendant in publishing this article was wrong, improper and unjustifiable, and that therefore the publication was malicious in this legal sense of the word malicious, but that the publication was made with express malice, that is, that it was made with an evil design existing in the mind of the

defendant towards the plaintiff; that not only was it unjusti-
fiable and not privileged, but that his actual intent as dis-
tinguished from the legal intent, was malicious; that he
had ill-will and an evil design against the plaintiff in making
this publication.   Of course, gentlemen, this is also a ques-
tion of fact for you to pass upon.

" The plaintiff calls your attention, on this part of the case,
to the fact that, at the time of this publication, this man had
ceased to be a selectman, and had no special interest in the
payment of this bill.   He calls your attention to the fact
that, after this suit was brought, he published in the *Times*
of this city this same libel.   He calls your attention to a
letter written after this suit was brought, as bearing upon
this question of actual malice, of this actual existing evil
design, at the time of this publication, existing in the mind
of the defendant towards this man.   It is for you to say,
gentlemen, upon all the evidence, whether such actual
malice existed or not, taking into account the evidence in the
case on the part of the defendant, that there was a good deal
of talk about the way that this man administered this estate,
whether rightly or wrongfully; that there was comment
about it and rumors about it.   If you find that this existed,
as claimed by him, take this also in account in determining
this question of actual malice, and say on the whole evidence
whether such malice existed or not."

And the same extract from the charge also destroys the
foundation of the fourth assignment of error, that the court
failed "to charge the jury that the facts and circumstances
surrounding the publication of the libel, and the presump-
tions arising from these facts, must convince the jury that
there was actual malice."

But we have already occupied too much space on this part
of the case.   The record abundantly demonstrates that the
defendant could not possibly have been aggrieved by any-
thing stated or omitted in the charge to the jury relative to
malice, for, in addition to the pregnant evidence furnished
by the intentional publication of a false statement so mani-
festly defamatory and injurious in its nature, and in addition

to the various items of evidence adverted to in the charge, we have on record the distinct admission of the defendant "that he had the plaintiff in mind in writing the article and wrote and published it to incite the plaintiff to pay said claim and to amuse the public." This admission alone justifies the finding of "malice in fact." In *Moore* v. *Stevenson, supra,* the charge, which was approved by this court, said, among other things, that if the publication by the defendant "was for the purpose of ministering to a vitiated public appetite for scandal, not knowing or caring whether the publication was true or false, he was actuated by improper and unjustifiable motives and his conduct was malicious in fact." Such a purpose, in effect, the defendant in the case at bar confessed, and in addition another purpose which seems to have been akin to blackmail.

3. This brings us to the only remaining topic for review— whether there was error in the charge as to damages. A reference to the charge will show that the third and fifth errors as assigned are not well founded. Complaint is made in the defendant's brief that the jury were not told they must find malice in fact before they could find a verdict for the plaintiff. This particular phrase was not used, nor was it necessary. The court repeatedly told the jury that they must find malice and a definition was given which, as we have seen, was entirely correct as answering to "malice in fact," and after dwelling upon the matter with considerable detail the court says : "If you find, gentlemen, that this was a libel, published of and concerning the plaintiff, as he claims, that it was false and malicious in the sense I have attempted to explain to you, the next question will be the amount of damages. * * * There are no special damages claimed here, gentlemen. The plaintiff claims general damages, and if you find that this was a libel, falsely and maliciously published of and concerning him, and of and concerning him in his profession, the law presumes, without proof, that there was some damage, and it is for you to say how much, taking into account all the circumstances that have been proved in this case."

The defendant's brief says:—" If the publication was false and the jury were satisfied from the evidence in regard to the circumstances attending the publication that there was malice in fact, the law would perhaps presume damage." This concession seems to us to justify the charge as given.

No complaint is made of the charge in regard to vindictive damages, except the statement that in estimating such damages the jury might take into account the plaintiff's counsel fees. But this part of the charge is based on numerous decisions which amply justify it. *Linsley* v. *Bushnell,* 15 Conn., 236; *Noyes* v. *Ward,* 19 id., 264; *Dalton* v. *Beers,* 38 id., 529; *Bennett* v. *Gibbons,* 55 id., 452.

There is no error in the rulings and judgment complained of.

In this opinion the other judges concurred.