### THE STATE OF CONNECTICUT *vs.* WILLIAM J. PAPE.

Third Judicial District, Bridgeport, October Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A general demurrer is sufficient in criminal cases, under our practice.
The final clause of § 1284 of the General Statutes—originally enacted in a slightly different form in 1865—makes it a criminal offense to "write or print and publicly exhibit or distribute . . . any offensive, indecent, or abusive matter, concerning any person." *Held* that there was nothing in the origin of the Act, in its terms, or in its treatment in successive revisions of the statutes, which afforded any countenance or support to the claim that newspaper libels of a criminal nature were excluded from its operation; and, on the contrary, that the statute applied to all persons and classes without any exception.
The General Assembly has the power to create the statutory crime of libel and to affix penalties for its commission, notwithstanding the common law may furnish an adequate protection against any form of criminal defamation.
In a prosecution under this statute against the editor of a newspaper,

the offensive and abusive matter, which was set forth in full in the information, consisted of two newspaper articles which asserted, in substance, that a State senator (naming him) had pledged himself to high ideals before his election but afterward had traded them, together with the wishes and interests of his constituents and his own soul, in order to secure an office from the General Assembly of which he was a member; and that he had attempted to justify his conduct by reading to the senate a knowingly false statement. *Held* that these charges were not expressions of opinion but assertions of fact, and, if untrue, were abusive and offensive even to the point of being scurrilous.

Free and fair criticism of public officials by the press is a right guaranteed by the Constitution and imbedded in our common law, and is to be maintained and protected by the courts; but this right implies that the occasion for comment must not be used to circulate false and defamatory matter, nor made an opportunity for the gratification of personal antagonism or malice.

The statute (§ 1284) deals with defamatory language and covers a large part, if not the whole, of the field of defamatory matter falling within what is known to the law as libelous; and the principles and procedure which have been developed and applied in criminal trials for libel should control, so far as applicable, a prosecution under this statute.

The only practical difference between criminal libel at common law and a violation of the statute (§ 1284) is, that in the former proof of malice is required (although presumed from the publication), while in the latter it is not. But in either case, when it appears from the evidence of the State that the occasion for fair comment, relied upon by the accused, has been abused, the constitutional guaranty of free speech and free press invoked by him will not save him from conviction.

To show such abuse the State may prove malice either by extrinsic evidence or from the article itself.

Where the information alleges that the abusive and offensive matter concerned a public official and was published in a newspaper, this shows prima facie an occasion for fair comment, and the State, in order to convict, must prove that the occasion was abused, that is, that the articles were published in malice; and under these circumstances the information must allege malice, or facts equivalent thereto, in order to charge an offense under the statute.

The articles in the present case *held* to be clearly abusive and offensive on their face, and sufficient, upon proof of their publication and in the absence of evidence of their truth or of good faith, to justify a jury in finding an improper and unjustifiable motive in publishing them.

Argued October 28th, 1915—decided January 13th, 1916.

INFORMATION for writing, printing and publicly exhibiting and distributing in a newspaper in Waterbury, certain offensive, indecent and abusive matter of and concerning a resident of Waterbury, then a State senator representing the fifteenth district, brought to and tried by the District Court of Waterbury, *Wolfe, Acting-Judge,* upon a demurrer to the information; the court sustained the demurrer and rendered judgment in favor of the accused, from which the State, with permission of the trial court, appealed. *Error and cause remanded.*

*Leonard J. Nickerson* and *Edward B. Reiley,* for the appellant (the State).

*Nathaniel R. Bronson* and *Lawrence L. Lewis,* for the appellee (the accused).

WHEELER, J. The information charges, in two counts, that the accused did unlawfully write, print, and publicly exhibit and distribute in a newspaper, certain offensive, indecent and abusive matter concerning a Mr. Peasley, which it quotes at length. The offense is charged in the language of General Statutes, § 1284. The accused demurred generally to the information, the demurrer was sustained, and judgment was entered in favor of the accused.

The State claims the demurrer should have been overruled because, first, it is not specific; and secondly, because the information does charge a crime, and properly charge it.

We think the general demurrer as filed accords with our practice in criminal causes.

The accused supports the decision upon the demurrer mainly upon three grounds: (1) that the clause of § 1284, upon which the information is based, does not

apply to newspapers; (2) that the articles quoted are not within the legal definition of the terms as used in this clause; (3) that this clause, purporting to charge a crime, is in contravention of our constitutional guarantees of liberty of speech and of the press, and of the right to defend by proving the truth of the publication.

We will consider these grounds in the order made.

1. The statute upon which the information is based was enacted in 1865 (Public Acts of 1865, p. 80, Chap. 86). It created it a crime for one to "write, or print, and publicly exhibit, or cause to be exhibited, or distribute, or cause to be distributed, any indecent, libelous or obscene and abusive matter, of or concerning any person or persons." The history of this Act lends no support to the claim that newspapers are excepted from its provisions. It was re-enacted in the Revision of 1866. In the Revision of 1875 it was incorporated in shortened form in the breach of the peace statute. The revisers made this Act a part of the breach of the peace statute, we presume, having in mind that libel was originally made punishable as a misdemeanor on the ground that such a publication had a tendency to disturb the public peace. 1 Hawk. P. C. (8th Ed.) 542, § 3; *State* v. *Avery*, 7 Conn. 266. The words "libelous" and "obscene" are omitted in this Revision from the classes of defamatory matter named in the statute. These omissions were, it seems most likely, made through a desire to avoid superfluous matter. "Indecent" includes "obscene." As the avoidance of surplusage was the obvious purpose of dropping "obscene," it is highly probable that its associated word "libelous" was dropped for a like reason. "Abusive" and "indecent" are general terms which include all vituperative, scurrilous, insulting, gross, vile, impure, and obscene language. These terms may well have

been thought to include the whole range of defamatory language, and so to have made it unnecessary to continue the word "libelous."

This seems a more reasonable view than that the omission was intended to eliminate criminal libel as applied to newspapers. This argument is made in forgetfulness that the law makes no distinction between the libel by the newspaper and by the individual. "Libelous" refers to all libelous matter, and plainly abusive and indecent matter may be libelous matter. Later, there was added to this statute, as appears in the Revision 1888, § 1509, the words, "or who shall publicly exhibit, post up, or advertise any . . . offensive matter." And with these additions and omissions the crime created by the Act of 1865 stands. We find nothing in the Act or in its history which countenances the claim that newspaper libels are excluded from the clause of the section of the statute we are considering. The terms of this clause of the statute, in their natural meaning, include every one who commits the offense charged. The terms of this clause suggest no exception. Unless the intention to exclude a class from the operation of a general statute is manifest from its terms, or its necessary implications, it cannot be found.

It is said the common-law crime of libel is adequate to protect against any form of criminal defamation. If this be granted, it could not prevent the General Assembly creating a statutory crime of libel, or a statutory crime punishing the printing or writing and publication of defamatory matter; or from changing the form of the crime of libel by enlarging its scope or lessening its sphere, or by increasing or diminishing its penalties, or by incorporating this crime in a statute covering other crimes.

It is insisted that the General Assembly did not intend to make it an offense to print and publish in a

newspaper any offensive, indecent, or abusive matter, regardless of the occasion of its publication, or of its truth, or of its innocent purpose. We fully agree with the counsel for the accused, that a statute accomplishing ends such as these would violate our constitutional guarantees of liberty of speech and of the press. And we are further of the opinion that it would then be subversive of those principles of the common law which control and govern the writing or printing and publication of all defamatory matter. Later on we shall endeavor to show that this clause of the statute does not lead to such ends, and is not unconstitutional. But if we thought otherwise, we could not write into the statute an exception in the interest of newspapers, and, until this had been done, the statute could not be read other than as applying to all persons and all classes. We cannot see the force of the suggestion that the words "publicly exhibit . . . or distribute" indicate an intention to punish only the public exhibition by way of pamphlet, poster, or other like printed matter of the kind designated in the statute. The language used is not capable of such a restricted construction and nothing in the history of the Act tends to aid this view.

2. The newspaper articles criticise the public conduct of a State senator. The criticism is severe, extremely caustic, and somewhat ironical, and the articles plainly violate the canons of good taste. They represent that the senator, on the night of his nomination, said: "If elected . . . I shall have no axe to grind and no selfish interest to serve. All that I can gain from the office of senator is the personal satisfaction that will come to me from having rendered faithful and efficient public service"; and that despite this pledge he had sold out his constituents and traded their wishes and interests and his own soul for an office. In short, the charge

is that this public officer pledged himself to high ideals before election, and after the election traded them, his constituents' interests and wishes and his own soul, in order to secure an office through the General Assembly, of which he was a part. And one of the articles charges that the senator, in support or justification of his position in this matter, read to the Senate an untrue report which he himself knew to be false.

These are charges of corrupt conduct in a specific matter, of gross breaches of public duty. They are not expressions of opinion, but rather assertions of facts. If untrue, they passed the boundary of fair criticism and were abusive and offensive, even to the point of being scurrilous. The right and duty of the press to give to the public information regarding the public conduct of a public officer is recognized by our law, and on another occasion we said the free and fearless performance of that duty would be protected by the court; but the very nature of this duty implies good faith. That means that the occasion for comment must not be used to circulate false and defamatory matter, nor be made an opportunity for the gratification of personal antagonism or malice. Fair criticism by the press is one of the strongest agencies which free government knows for keeping the public service honest and capable, and its officials faithful and honorable. Its right of criticism must not be hampered. When it descends to defamation through improper and unjustifiable motives, its language may be susceptible of other characterization, but it can never escape that of being abusive.

3. Is this clause of this statute unconstitutional? Until the passage of the Act of 1865, the offense of publishing defamatory matter was confined to the common-law crime of libel. As we have before said, the General Assembly may create the statutory offense

of libel, or an offense against the publication of defamatory matter; and it may eliminate from the crime it creates the element of malice, essential to the common-law crime of libel. The General Assembly cannot curtail the liberty of speech or of the press, guaranteed as it is by our Constitution. And before our Constitution, this right was imbedded in our common law. As a consequence, free and fair criticism on any subject reasonably open to public discussion is not defamation and is not libelous; and this, too, is a principle of the common law. *Campbell* v. *Spottiswoode*, 3 Best & S. (Q. B.) 769, 113 Eng. Com. Law, 769, 774; Pollock on Torts (9th Ed.) 262.

Liberty of speech and of the press is not license, not lawlessness, but the right to fairly criticise and comment. The occasion which gives one the right to comment is unfortunately called in our law an occasion of privilege; on the contrary it is one of right. The truth in all criminal actions of libel is by our Constitution made a defense. The common law made it a defense in actions of defamation prior to the Constitution. It follows that however disparaging criticism of a public man may be, if it be true it will not be libelous, but if it be false in its facts it cannot be justified, even if the publisher believe the charge made to be true and has reasonable ground so to believe. *Burt* v. *Advertiser Newspaper Co.*, 154 Mass. 238, 245, 28 N. E. 1; *Commonwealth* v. *Pratt*, 208 Mass. 553, 559, 95 N. E. 105; Pollock on Torts (9th Ed.) 262.

The language which falls within the statutory penalty prescribed by § 1284 is defamatory language, covering, if not the whole, at least a very great part of the entire field of defamatory matter and falling within the term known to the law as libelous. The body of common-law principles which has grown up around the action in the prosecution of or the redress

of a libel are principles and procedure which must govern all prosecutions and complaints for writing, printing, and publishing defamatory matter. They should control, so far as applicable, this prosecution. In a prosecution for libel, malice is a necessary allegation and element in the proof. But the malice is presumed from the publication, and the presumption stands as proof. Under § 1284, the publication of the defamatory matter constitutes the crime. The practical difference between these crimes is that in the common-law crime, libel, the proof is helped out by the presumption of the law, while in the crime under this statute prima facie proof of malice is not required. As we have seen, the publication of matter otherwise .defamatory, by one under circumstances which give him the right to comment and which he has made without an abuse of that right, is no libel. And so a similar publication of the defamatory matter specified in the statutory terms as abusive, offensive, or indecent, does not constitute a crime, for the publisher has done in a proper way no more than he had a right to do: the occasion gave him the right to comment.

The prosecutor need not allege in the information the circumstances surrounding the publication in order to show that the occasion was not one of privilege. That burden is on the accused. And so, in a prosecution under § 1284, it is not incumbent upon the State to allege or prove that the occasion did not give the accused the right to comment. That burden was upon him. In the prosecution of a libel, when it appears that the accused has passed the bounds of fair comment, his published criticism becomes malicious and his constitutional right of free speech and press will not protect him from the consequences of his offense. So, in a case under the statute, when it appears in allegation or proof that the occasion for fair comment

has been abused, the constitutional right of free speech and press will not save the accused from the penalty of his crime.

In each case, when the occasion gave the accused the right of free comment, the burden is cast upon the State to prove that the occasion had been abused and that the words were spoken, written or printed from an improper or unjustifiable motive, that is, maliciously. The State may prove that the publication was malicious by extrinsic evidence, or from the article itself. Crompton, J., in *Campbell* v. *Spottiswoode*, 3 Best & S. (Q. B.) 769, 113 Eng. Com. L. 769, 774; *Flanagan* v. *McLane*, 87 Conn. 220, 87 Atl. 727, 88 id. 96. In this case the State set forth that the articles were published in a newspaper, therefore the occasion gave the right to fairly comment upon the public conduct of Senator Peasley, and in order to convict, it must show, that this occasion was abused, that is, that the articles were published in malice. Unless the information contains an allegation of malice, or facts which are its equivalent, the State has failed to set forth a case. As we examine these articles, we think upon their face they are so clearly abusive and offensive that, on proof of their publication and in the absence of proof of their truth or other evidence of good faith, a jury would be justified in finding that they were published from an improper and unjustifiable motive.

Under these circumstances we are of the opinion the demurrer to the information should have been overruled.

There is error, the judgment is reversed and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.