# CHARLESTON.

## STATE *v.* FRANK J. PAYNE.

Submitted September 22, 1920. Decided October 5, 1920.

1. LIBEL AND SLANDER—*Indictment Not Alleging That Accused "Unlawfully and Maliciously Did Publish," Fatally Defective.*

   An indictment for criminal libel, which does not directly aver that the accused "unlawfully and maliciously did publish" the article or writing complained of, or contain the legal equivalent of such averment, is fatally defective upon demurrer. (p. 103).

2. SAME—*Malice and Illegality Are Elements of Criminal Libel.*

   The illegality and malice involved in the publication of a libel constitute the essence of the offense. (p. 103).

(WILLIAMS, PRESIDENT, absent.)

Case Certified from Circuit Court, Mineral County.

Frank J. Payne was indicted for publishing a criminal libel. His demurrer to the indictment was sustained and the ruling certified.

*Affirmed.*

*Emory L. Tyler,* prosecuting attorney, *H. G. Fisher* and *Taylor Morrison,* for the State.

*W. C. Grimes* and *Arthur Arnold,* for defendant.

LYNCH, JUDGE:

To an indictment charging the publishing of a criminal libel defendant demurred, and the court below, after sustaining the demurrer, certified its ruling here for our judgment thereon.

The indictment, after the usual formalities of caption and commencement, contains this statement of the offense charged: "That Frank J. Payne, in an article and writing published by him and under his authority and direction in 'The Mountain Echo,' a weekly newspaper of general circulation in said Mineral County, West Virginia, published by the Echo Company, corporation, in the issue of said paper dated July 19, 1919, unlawfully and maliciously contriving to injure and vilify one W. H. Barger, and to bring said W. H. Barger into public scandal, contempt, ridicule and disgrace, then and there, to-wit, on the 19th day of July, 1919, at Keyser, in Mineral County, West Virginia, did publish under the authority and direction of him, the said Frank J. Payne, in said newspaper aforesaid, called 'The Mountain Echo,' and circulated in said county, a false, scandalous, malicious and defamatory libel of and concerning the said W. H. Barger, containing divers false, scandalous, malicious and defamatory matters and things of and concerning the said W. H. Barger, of the tenor following, to-wit;" etc.

The reason assigned by the trial court in sustaining the demurrer and quashing the indictment was "that said indictment fails to aver that the said defendant unlawfully and maliciously did publish the article complained of."

In his work on Slander & Libel (3d Ed.) § 1116, Newell defines the formal parts of an indictment for criminal libel

as, the caption, the commencement, the statement of the offense charged, and the conclusion. The first two are merely preliminary, the caption designating the state, county and court in which the indictment is returned, and the commencement introducing the presentment or finding of the grand jury or other indicting body. The statement or presentment is that part of the indictment which contains the essential requisites or ingredients of the offense charged; classed by Newell as three in number, to-wit, the name of the person accused, the statement of the criminal intent, and the charge, including the colloquium and innuendoes. The purpose of the conclusion is evident.

An analysis of the charging part of the indictment shows: "That Frank J. Payne, in an article and writing published by him and under his authority and direction in 'The Mountain Echo,' * * * in the issue of said paper dated July 19, 1919, * * * then and there * * * did publish, under the authority and direction of him, the said Frank J. Payne, in said newspaper aforesaid, * * * a false, scandalous, malicious and defamatory libel* * *." Nowhere in this part of the indictment do the words, "unlawfully and maliciously," or their equivalent, appear. It is true they are found in the statement of defendant's criminal intent with respect to the results sought to be achieved by him, to-wit: "unlawfully and maliciously contriving to injure and vilify one W. H. Barger, and to bring said W. H. Barger into public scandal, contempt, ridicule and disgrace." But these words apply only to the results intended by accused, not primarily to the illegal and malicious character of the publication itself. Bishop terms a clause of this nature "a sort of introductory malediction of the defendant," which he regards as wholly useless and better omitted. 3 Bishop's New Crim. Proc. (2d Ed.) § 783; Bishop's Directions & Forms (2d Ed.) p. 360, note 3. Whether such an averment is unnecessary, as Bishop says, or properly included in the indictment, as Newell intimates (Slander &. Libel (3d Ed.) § 1116), does not concern us here. For, whatever may be the better rule in that regard, all the forms of indictments provided by text writers agree as to the necessity for the use of such words

as "unlawfully and maliciously," or their equivalent, in that part of the indictment directly charging the publication of the libel. Newell, Slander & Libel (3d Ed.) § 1116; 3 Bishop's New Crim. Proc. (2d Ed.) § 783; 2 Wharton, Precedents of Indictments & Pleas (4th Ed.) p. 488; 1 Abbott's Forms of Pleading (2d Ed.) § 1237; 2 Archbold's Cr. Pr. & Pl. (8th Ed.) p. 1038. See also *Commonwealth* v. *Morris,* 1 Va. Cas. 176.

The form furnished by Newell follows: "That John Smith, * * * in contriving and unlawfully, wickedly and maliciously intending to injure, vilify and prejudice one J. N., and to deprive him of his good name, fame, credit and reputation, and to bring him into great contempt, scandal, infamy and disgrace, on etc., at the county aforesaid, unlawfully, wickedly and maliciously did write and publish, and cause and procure to be written and published, a false, scandalous, malicious and defamatory libel," etc. The illegality and malice involved in the publication of a libel constitute the essence of the offense. Newell, Slander & Libel (3d Ed.) § 1083; idem, § 1115; 2 Bishop's New Crim. Law § 922; 18 Stand. Enc. Proc. 965; *State* v. *Pape,* 90 Conn. 98. And malice, as an element in criminal libel, generally is presumed to exist from the act of publishing.

The indictment in this case does not allege that Frank J. Payne unlawfully and maliciously did publish, but only that he was "unlawfully and maliciously contriving to injure." The facts in *State* v. *Berry,* 112 Me. 501, are somewhat similar to those involved here. A statute of that state made it a criminal offense to wilfully publish or circulate a libel. An indictment charging that defendant did "unlawfully, maliciously and wickedly compose, write and print, and did, at Portland in the county of Cumberland, publish and circulate" a certain libel, was held insufficient on the ground that, though the word "maliciously" probably would include "wilful" action, yet that adverb could not be held to qualify the verbs, "publish and circulate." So here the adverbs, "unlawfully and maliciously," do not relate to the verb, "did publish," but to the term, "contriving."

It is urged by the state that this indictment follows those held sufficient in *State* v. *Aler*, 39 W. Va. 549, and *State* v. *Clifford*, 58 W. Va. 681. But the question urged by defendant in this case was not raised in those, and therefore they do not constitute authority upon the point here in issue.

Other questions raised by the demurrer we shall not consider at this time, for the indictment being fatally defective, there is no offense legally charged before this court for consideration.

*Affirmed.*