## STATE OF CONNECTICUT *v.* LORING WHITESIDE

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

 

Argued January 5—decided March 21, 1961

*B. Fred Damiani,* for the appellant (defendant).

*George R. Tiernan,* prosecuting attorney, for the appellee (state).

MELLITZ, J. The defendant was charged, in an information containing twenty-three counts, with having published a series of libels in violation of

what is now General Statutes § 53-174.[1] Upon the trial to the jury, he was found guilty on four counts, and he has taken this appeal. His principal claims are that the information was fatally defective in that it lacked an allegation of malice; that the state failed to introduce evidence of actual malice in the publication of the alleged libels; that the state failed to prove that a breach of the peace resulted from the publication of the libels; and that a finding of guilt on count 12 could not be sustained when the defendant was found not guilty on other counts in which he was charged with publishing the same or similar statements. Error is assigned also in the charge, in the finding, and in rulings on evidence.

The alleged libels were published in a small weekly paper, "the grapevine press," printed, published and distributed by the defendant. Each of the twenty-three issues from May 21, 1958, through October 22, 1958, was made the basis of a separate count in the information. In each count, the defendant was accused of publishing, in a designated issue of the paper, a libel concerning certain named persons, in violation of what is now § 53-174. The information was in the short form authorized by Practice Book § 344. This section provides that an offense may be charged by using the name given to it by the common law or by a statute, or by stating so much of the definition of the offense as is sufficient to give the court and the accused notice of what offense is intended to be charged. Practice Book § 350 provides that an indictment or informa-

---

[1] "Sec. 53-174. BREACH OF THE PEACE. INTIMIDATION. LIBEL. Any person who disturbs or breaks the peace . . . or writes or prints and publicly exhibits or distributes . . . any offensive, indecent or abusive matter concerning any person, shall be fined . . . or imprisoned . . . or both."

tion need not allege that the offense was committed or the act done "maliciously," unless such characterization is necessary to charge the offense under § 344. The practice authorized by § 344 has been held to be constitutional. *State* v. *Davis,* 141 Conn. 319, 321, 106 A.2d 159. The claim of the defendant is that the alleged libels were published on occasions of privilege and therefore that an allegation of malice was essential to charge the offense under § 344; and further, that proof that the publications were made maliciously was required to sustain a conviction.

At common law, malice constitutes the essence of the offense of criminal libel and, in a prosecution, is a necessary allegation and an element in the proof. The malice referred to is merely the malice which the law implies from the publication of defamatory matter and means no more than the intent to publish it. The malice is presumed from the publication, and the presumption stands as proof. *State* v. *Pape,* 90 Conn. 98, 106, 96 A. 313. Under the statute upon which the prosecution here is based, the offense consists of the publication of the defamatory matter. That, itself, constitutes the crime, and prima facie proof of malice is not required. *Id.* The situation changes, however, when it is shown that the publication was made in circumstances which the law recognizes as an occasion of privilege. *Flanagan* v. *McLane,* 87 Conn. 220, 222, 87 A. 727; *Atwater* v. *Morning News Co.,* 67 Conn. 504, 516, 34 A. 865. Such an occasion rebuts the implication of malice which the law draws from the publication of false and defamatory matter, and casts upon the state the burden of proving that the occasion had been abused and that the defendant was in fact actuated by malice toward the libelee. *State* v. *Pape,*

supra, 107. The state need not set forth the circumstances surrounding the publication, showing whether the occasion was one of privilege. That burden is on the accused. Id., 106.

The information here charged the defendant with publishing libels concerning certain named persons, but those persons were not otherwise described or identified. It is the defendant's contention that they were, in fact, attorneys at law and public officers and that the occasions of the publications were privileged. The facts showing the occasions to be privileged did not, as in the *Pape* case, appear from the contents of the information. It was therefore not essential that the information contain an allegation that the publications were maliciously made. Practice Book § 350. The burden was on the defendant to prove, by a fair preponderance of the evidence, his claim of privilege. *State* v. *Gardner,* 112 Conn. 121, 124, 151 A. 349; *State* v. *Pape,* supra, 106. If he sustained that burden, it became incumbent upon the state to prove that the privilege was abused and that in publishing the defamatory matter the defendant was, in fact, actuated by malice. Id., 107. The court so instructed the jury in its charge. The absence of an allegation of malice did not render the information defective.

The contention that the state introduced no evidence of malice and that there was no evidence before the jury from which malice could be found is equally without merit. Malice in fact is sufficiently shown by proof that the publications were made with improper and unjustifiable motives. *Corsello* v. *Emerson Bros., Inc.,* 106 Conn. 127, 132, 137 A. 390; *Hassett* v. *Carroll,* 85 Conn. 23, 37, 81 A. 1013; *Wynne* v. *Parsons,* 57 Conn. 73, 80, 17 A. 362; *Hotchkiss* v. *Porter,* 30 Conn. 414, 421; *Moore* v.

*Stevenson,* 27 Conn. 14, 28. In its proof of malice, the state is not confined to evidence extrinsic to the contents of the publication itself. From the alleged libel, the jury may determine whether, on the face of it, there is evidence of malice. *Flanagan* v. *McLane,* supra, 222; *State* v. *Pape,* supra, 106. Here, the alleged libelous statements charged the named persons with a wide variety of unlawful and criminal acts, including fraud, perjury, blackmail, intimidation, concealment of crime, and control of organized gambling and prostitution; and further, that they would not hesitate to murder to prevent disclosure of their activities. The publications clearly disclosed such scurrilous, abusive and offensive matter that a jury plainly would be justified in concluding that the publications were made from improper and unjustifiable motives, in the absence of evidence of their truth or other evidence of good faith. Evidence of malice could be found also in the defendant's deliberate repetition of the statements in the various issues of his publication. *Ely* v. *Mason,* 97 Conn. 38, 45, 115 A. 479; *State* v. *Riggs,* 39 Conn. 498, 503. There was ample evidence before the jury to support a finding of malice.

Another contention of the defendant is that to support a conviction under the statute there must be proof of a breach of the peace. It is true that the offense here charged is spelled out in the same statute as the crime of breach of the peace, but it is a separate and distinct offense. The publishing of defamatory matter was made a statutory offense by chapter 86 of the Public Acts of 1865; Rev. 1866, p. 264, § 123; and the offense has been incorporated in the breach of the peace statute since 1875. Rev. 1875, p. 509, § 10; *State* v. *Pape,* supra, 101. At common law, the basis for a criminal prosecution

for the publication of a libel is its tendency to create a breach of the peace; it is immaterial that no one was incited to commit any act by reason of the libel. *State* v. *Avery,* 7 Conn. 266, 269. The gravamen of the offense under the statute is that the publication affects injuriously the peace and good order of society; *State* v. *Gardner,* supra; and the offense is complete when the accused has done the thing set forth in the statute, irrespective of whether any other act resulted from it. The court correctly ruled that it was not incumbent upon the state to prove that a disturbance of the public peace actually resulted from the publications.

The defendant contends that his conviction on count 12 is invalid and should be set aside because he was found not guilty on a number of counts in which he was charged with publishing, on other dates, defamatory matter similar to that charged in count 12 and concerning the same persons. Each count in the information charged a separate and distinct offense and was complete in itself. The only question is whether the evidence was sufficient to support a conviction on count 12, irrespective of the verdict on the other counts. Except as to the claim, already considered, that the state presented no evidence of malice, the defendant has not questioned the sufficiency of the evidence to warrant a conviction on count 12. There was no basis for the court to disturb the verdict on that count.

The defendant's objection to the inclusion of certain paragraphs in the finding involves a misconception of the nature of the finding in a jury trial. It is merely a narrative of the facts claimed to have been proved by each side, made for the purpose of fairly presenting any claimed errors in the charge or rulings of the court. *Szela* v. *Johnson Motor Lines,*

*Inc.,* 145 Conn. 714, 719, 146 A.2d 910. If there is no evidence affording a reasonable basis for a claim of proof, the claim may be stricken out; *Schmeltz* v. *Tracy,* 119 Conn. 492, 494, 177 A. 520; but a correction will not be made merely to secure meticulous accuracy as to details in the claims of proof. *Daly Bros., Inc.* v. *Spallone,* 114 Conn. 236, 243, 158 A. 237; *Brown* v. *Goodwin,* 110 Conn. 217, 218, 147 A. 673. The finding here furnished a fair and adequate basis for testing the errors in law claimed to have been made by the court, and no corrections are warranted.

Error is assigned in the failure of the court to comply with numerous requests to charge and in various paragraphs of the charge as delivered. The substance of the requests, to the extent that they were correct and adapted to the issues, was incorporated in the charge. The court was not required to charge in the language of the requests. Of the paragraphs of the charge as delivered to which the defendant took exception, only one requires consideration. This has reference to the instruction given by the court with relation to article first, § 7, of the constitution of Connecticut, which provides: "In all prosecutions or indictments for libels, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court." The defendant contends that in accordance with this provision the court should have charged that the jury were, under the court's direction, the judges of the law as well as of the facts. After giving the jury proper instructions as to the duty of the court to explain the law and the duty of the jury to decide the facts and to accept the law as explained by the court, the court read the text of the constitutional provision and

then informed the jury that the instructions given with respect to whether the matters published were defamatory or not were only advisory. This instruction was, if anything, more favorable to the defendant than he was entitled to, although ample authority supports the view adopted by the court. *Harrington* v. *Butte Miner Co.,* 48 Mont. 550, 139 P. 451 & note, 38 Am. & Eng. Ann. Cas. 1261, 1271. The object of the constitutional provision was to put libel cases on the same footing as other criminal prosecutions; *Gray* v. *Mossman,* 91 Conn. 430, 443, 99 A. 1062; 2 Cooley, Constitutional Limitations (8th Ed.) p. 955; and to give the jury the right to return a general verdict of guilty or not guilty, as in other criminal cases. 2 Wharton, Criminal Law and Procedure § 889; *Oakes* v. *State,* 98 Miss. 80, 86, 54 So. 79. It does not have the effect of relieving the jury of the duty of accepting and applying to the facts the law as given by the court. 2 Wharton, loc. cit. Practically the identical question was presented in *State* v. *Gannon,* 75 Conn. 206, 52 A. 727, where the statute then in force regarding the respective functions of court and jury in criminal cases was under consideration. The statute provided that the court should submit to the jury's consideration both the law and the facts. Earlier cases, to the extent that they could be regarded as assuming that the jury could lawfully disregard the law as stated by the court, were expressly overruled (p. 235), and it was held (p. 221) that in no sense did the statute authorize an independent determination by the jury of what the law was. An instruction permitting the jury to determine the law was held (p. 234) to be erroneous. The constitutional provision here involved has not curtailed the right of the court to

determine the law to be applied by the jury in the rendition of a general verdict in a prosecution for libel.

Finally, error is assigned in a number of rulings on evidence. During the examination of a witness by the defendant, the state objected to a question but assigned no ground. The court sustained the objection and refused the defendant's request to have the ground of objection stated. Under the provisions of Practice Book § 155, whenever an objection to the admission of evidence is made, the grounds upon which the evidence is claimed or upon which the objection is made are required to be stated. The defendant was entitled to have the ground of the objection stated. To avail himself of the rule, however, he was required to state the ground for his claim of admissibility. He neglected to do so, and since he failed to comply with the rule, and no ground of objection was given, the exclusion of the evidence cannot be held to constitute reversible error. *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153. Furthermore, the ruling related to a count on which the defendant was found not guilty, and the defendant could not have been harmed by the ruling. In another assignment, the defendant complains of the exclusion of testimony he sought to give as to the origin of certain statements he had published. He was allowed to testify concerning his source of information but not concerning the source from which his informant had acquired the material. Such evidence would clearly be objectionable as hearsay and was properly excluded. Evidence to prove truth must come from witnesses who have knowledge of the facts. 3 Underhill, Criminal Evidence (5th Ed.) § 697. A number of other rulings on evidence which were

assigned as error were clearly correct and do not require discussion.

There is no error.

In this opinion Baldwin, C. J., King and Shea, Js., concurred; Murphy, J., concurred in the result.