## WALES O. HOTCHKISS *vs.* WILLIAM S. PORTER.

The act of 1855 with regard to libels, provides that " in every action for an alleged libel the defendant may give proof of intention, and unless the plaintiff shall prove malice in fact he shall recover nothing but his actual damage proved and specially alleged in the declaration." The provision that the defendant may give evidence of his intention, is only an extension of a rule previously existing as to the admissibility of evidence ; such evidence having been always admissible in reduction of damages, and the only difference here being that, in the absence of rebutting proof on the part of the plaintiff, it becomes a bar to the recovery of general damages.

The provision that the plaintiff shall prove malice in fact was not intended to pre-scribe any new rule as to the kind and degree of malice to be proved, or as to the evidence by which the existence in fact of improper motives was to be shown, but only to require that it should be shown, by other evidence than mere legal presumption from the fact of publication, that the defendant's motives were not proper and justifiable.

That the motives of the defendant in making the publication were improper and unjustifiable may be shown by the character of the publication itself, and by all the circumstances, and it is not necessary for the plaintiff to prove any actually hostile motive.

Any construction of the act which would make it abridge, beyond this limit, the rights of a plaintiff in such a suit, would bring it into conflict with the provision of the constitution, that " every person for an injury done him in his person, property or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

The case of *Moore* v. *Stevenson*, (27 Conn., 14,) considered and approved.

The defendant published of the plaintiff the following charge, in a newspaper, over his own signature :—" I hereby charge Wales O. Hotchkiss with having voted illegally at the election in April, 1860, and I am prepared to substantiate the charge by legal proof. New Haven, September 16, 1860." The charge was admitted to be untrue. In a suit for the libel, claiming only general damages, the defendant claimed in defense that he was a registrar of votes at the election referred to, that it was suspected that illegal votes had been cast, and that he was requested by sundry respectable citizens to ascertain whether it was so and by whom they were cast, that he suspected the plaintiff and upon information which he obtained was led to believe that the plaintiff was not a legal voter, and that the writing was published for the purpose of eliciting the truth ; and that the publication was without malice or political bias or improper motive of any kind. Held:

1. That it was not enough that the defendant believed the truth of the charge. This of itself gave him no right to make the charge in the manner in which he did.

2. That it was not enough that the defendant entertained in fact no unfriendly feelings towards the plaintiff, if his motives were not justifiable in the eye of the law.

3. That the pretence that he made the publication for the purpose of " eliciting the truth," was upon its face absurd ; the charge being made in the most positive terms and with a declaration of readiness to prove its truth.

Where the charge of the judge was adverse to the plaintiff and erroneous, but the jury returned a verdict for the plaintiff, fixing the damages however at a sum clearly insufficient and nearly nominal, it was held that the plaintiff was entitled to a new trial for the errors of the charge, it being manifest that the jury were influenced by it in fixing the damages.

ACTION on the case for a libel. The publication alleged was the following :—" I hereby charge Wales O. Hotchkiss and George Hall with having voted illegally at the election in April, 1860, and I am prepared to substantiate the charge by legal proof. W. S. Porter. New Haven, September 16, 1860." The declaration stated no special damage.

The case was tried to the jury in the superior court on the general issue, with notice of the special matters of defense hereinafter stated, before *McCurdy, J.*

On the trial the defendant admitted the writing and publishing of the words set forth in the declaration, and that the charge against the plaintiff which they contained was not true ; also that he delivered the writing for publication to the editor of a newspaper in the city of New Haven, who published it in his newspaper. The plaintiff offered evidence to prove that the defendant requested the editor to cause the plaintiff to be prosecuted for illegal voting, but the defendant denied this. The defendant claimed in defense, and offered evidence to prove, that he had been a registrar of votes in the town of New Haven, at the election in April, 1860, in the ward where the plaintiff voted at that election ; that it was suspected that illegal votes had been cast, and that he had been requested by sundry respectable persons to ascertain whether such votes had been cast, and if so, by whom ; that he had reason to suspect that the plaintiff had so voted ; that he made diligent inquiries at the places, and of the persons, where and from whom he would be most likely to obtain correct information, and upon information so received was led to believe, and did in fact believe, that the plaintiff was not an inhabitant of the town, and had no right to vote there ; that the writing was given to the

editor at his request, for the purpose of eliciting the truth; that the writing and publishing were without any malice, or unkind feelings, or improper motives on his part, but with good intentions, and for a laudable object, and that neither the plaintiff, nor his political opinions, were known to the defendant. The plaintiff requested the court to charge the jury,—1st. That the writing was libelous on its face. 2d. That the plaintiff was entitled to recover, although the jury should be satisfied that the defendant believed the statement in the writing to be true and that the plaintiff had failed to prove actual as distinguished from legal malice. 3d. That as the writing imputed a crime to the plaintiff, and offered to prove it, and the charge was not now claimed to be true, the law would infer sufficient malice to sustain the suit. 4th. That the facts claimed to be proved by the defendant, if found true, did not excuse the publication. 5th. That if the jury should find that, when leaving the writing for publication in the newspaper, the defendant had requested the editor to cause the plaintiff to be prosecuted, they were justified in finding from that fact actual malice. The court did not so charge the jury, but instructed them that, as the writing imputed to the plaintiff a crime, it was at the common law libelous on its face, and if found untrue malice would be inferred from such writing and publishing; but that a recent statute* had enacted that the defendant in such a suit might give proof of his intentions, and unless the plaintiff should prove malice in fact he should recover nothing but his actual damages proved and specially alleged in the declaration; that the question was whether the writing and publishing were with good intentions, and without malice, or the reverse; that this was a question of fact for the jury to determine; that upon this question the facts claimed by the plaintiff to have been proved were proper to be duly considered by the jury, but that they did not give a right of recovery *as a matter of law*, if the jury

---

* The act of 1855, here referred to, is as follows :—" In every action for alleged libel the defendant may give proof of intention, and unless the plaintiff shall prove malice in fact he shall recover nothing but his actual damage proved and specially alleged in the declaration."

should find the other facts to be true, as claimed to have been proved by the defendant ; and that, if they should be of opinion from the whole evidence that the defendant was not justified in such writing and publishing, according to the principles of law before stated, they should find for the plaintiff to recover such damages as in their opinion from the evidence he was justly entitled to recover.

The jury returned a verdict in favor of the plaintiff for $5, damages. The plaintiff moved for a new trial for error in the charge of the court.

*Doolittle*, in support of the motion.

The libel contains a distinct charge of crime, and an avowal of the author's ability to substantiate it by legal proof. If the words had been spoken by the defendant the law would have inferred malice and implied damage from the uttering of the words. But it is claimed that a person may write, print and publish in the public newspapers, thus communicating it to thousands, a slander which the law forbids him to speak to one. This proposition is too absurd to be sustained. The act of 1855 is to receive a reasonable construction. It was intended only for the protection of persons, like editors of newspapers, who innocently publish reports which are a part of the current news, and of which they have no reason to doubt the truth, or who may honestly publish animadversions upon the conduct of public men, and cases of that general character. It can never have been intended to apply to a case like this, where a crime is charged in the most positive manner, and the charge accompanied by a declaration that the person making it has the means of substantiating it by legal proof. *Moore* v. *Stevenson*, 27 Conn., 14. Any other construction would render the act unconstitutional. Const. of Conn., Art. 1, § 5. The pretence that the defendant published the charge for the purpose of eliciting the truth is absurd. It is charging a man with a crime and declaring one's ability to prove the charge, for the purpose of exciting inquiry and thus ascertaining whether he is guilty. The judge should have

told the jury that the law furnished no protection to the author of such a publication.

*Watrous*, contra.

There is no error in the charge. The declaration alleges no special damage. To recover therefore the plaintiff must, under the statute of 1855, prove " malice in fact," the defendant having gone into evidence of intention. Acts of 1855, p. 99. *Moore* v. *Stevenson*, 27 Conn., 14. *Bostwick* v. *Nickelson*, Kirby, 65. Whether or not malice in fact existed, was properly left to the jury. The question of intention being made, the whole evidence must necessarily have gone to them. 1 Swift Dig., 486, 7. 1 Hilliard on Torts, 333, *et seq.* The question " how much malice," as bearing upon the question of damages, is always one for the jury, even at common law where malice is inferred by the law. *Williams* v. *Miner*, 18 Conn., 464 ; and cases there cited. But the plaintiff can not complain even if there was error in the charge. The verdict was in his favor, and the jury have fixed the damages at what upon the evidence they thought they ought to be. A new trial will not be granted, even where there is error, if no injustice has been done by the verdict. 1 Graham and Wat., on New Trials, 301, 355, 525. 3 id., 832.

BUTLER, J. Every person who is entitled to the protection of our laws, is entitled to protection against injuries to his reputation, and to redress for them when committed. This is a great natural right, resting upon the fundamental principles which underlie the social compact, and existing independent of constitutional provisions. It is also recognized in the declaration of rights which is placed in the very front of the constitution of this state, and it is there provided that " every person, for an injury done him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." This right, thus existing and thus secured, legislative authority can not take away, abridge or impair, and any attempt to do it will be inoperative and void.

The remedy in a court of justice, which is thus guaranteed to every person for an injury to his reputation, and without denial, is twofold—the recovery of special and general damages ; special damages for every legal and natural consequence directly injurious in a pecuniary point of view, as cost and expenses incurred in defending against suits, loss of service, of custom in business, or the like ; and general damages, where no special injury has accrued, for the loss of standing and character, and the discomfort, humiliation and unhappiness which such loss occasions.

The act of 1855 in no way interferes with the right of a libeled person to his remedy for special damages. By the law as it stood before and since the adoption of the constitution, and at the time when the act in question was passed, a plaintiff was required to allege specially in his declaration any special injury for which he claimed damages, and that act leaves the right in every case to a recovery for special damage so alleged intact. The language is " actual damage proved and specially alleged in the declaration," but the meaning of it can not be misunderstood. So far forth the act is in harmony with the common law and the constitution. But the act also says that " the defendant may give proof of intention, and unless the plaintiff shall prove malice in fact, he shall recover nothing but his actual damage " &c.—that is, shall recover no *general damages*. Have the legislature by this language attempted to abridge materially the natural and constitutional right of every person to enter our courts and recover general damages for a general injury done to his reputation by an alleged libel ? If they have they have clearly transcended their powers, and we must so declare. If not, what have they attempted to do, and how far is their action constitutional and valid ? It will be observed that there are two provisions of the act to be considered in this connection.

First, that " the defendant may give evidence of intention." What did the legislature mean by this ? It has always, according to the course of the common law, been open to a defendant in an action for slander or libel, under either the general issue, a special plea, or a notice, to prove his inten-

tions, in order to rebut wholly or in part the malice which the law presumed or the plaintiff had attempted to prove. Thus the defendant might show under the general issue in justification that it was a privileged communication, and all such facts and circumstances as belonged to the *res gestæ*, and went to prove the intent with which the publication was made. It was doubtless true that he could not prove his intention in all cases, even under plea or notice, in justification, and that in a class of cases they could be proved only in mitigation of damages ; such as that the libel was made under a mistake which was forthwith corrected ; or that he had the libelous statement from a third person ; or, being the proprietor of a newspaper, that he merely copied the statement from another paper, giving his authority, &c. The act of 1855 was confessedly enacted to prevent editors of newspapers from being subjected to heavy punitive damages for articles which contained rumors, so generally circulated and credited as to constitute a part of the current news of the day, or proper and just criticisms upon public men, public measures or candidates for office, or other matters of public interest. And it may be fairly presumed that the legislature intended that the publishers of alleged libels might give their intention to publish them merely as current news or as just and fair criticisms, in evidence in justification in all cases, and that such evidence should be sufficient to rebut the presumption of malice which the law raises from the publication of an article which was defamatory and untrue, and throw the burthen of proving the fact of malice by other and additional evidence upon the plaintiff. If this was all that the legislature intended they have merely extended a rule respecting the admissibility of evidence, and it can hardly be said that they have materially abridged or impaired the right of the citizen to be protected in the enjoyment of his reputation, and the law can be safely sustained to that extent.

In relation to the second provision, viz: that unless the plaintiff shall prove malice in fact he shall recover no general damages, there is more difficulty, unless a limited construction is given to the act. A libel may be grievously injurious to the

reputation of a man or woman, embittering their lives and destroying their happiness, without causing any technical special damage which can be properly alleged in a declaration. The libeled persons may not be engaged in any service or business, or be subjected in consequence of the libel to a prosecution, suit, or expense, or be otherwise pecuniarily injured; yet an immediate resort to a court of justice may be necessary for the vindication of their characters, and the maintenance of that wholesome fear of punitive general damages which constitutes the principal protection to reputation. Their rights when thus resorting to a court of justice were well defined by the common law, and are guarantied to them " without denial " by the constitution. Have the legislature by the act in question undertaken to abridge that right, by requiring proof of any kind or degree of malice, any motive or intention, not before required in order to a recovery of general damages? And could they constitutionally do it? These questions were before this court in the late case of *Moore* v. *Stevenson*, and the act was so construed as to answer them in the negative. (27 Conn., 14.) The phrase " *malice in fact* " is a technical one, and, as the common law stood before the passage of the act of 1855, did not mean malignity, spite or hatred, but improper and unjustifiable motive ; and such the court held was its meaning in the law in question. And they further held that all that the legislature had said thereby, or could constitutionally say, was, that the defendant in all cases might prove that his motives were proper and justifiable, within the well settled principles of the common law, and the plaintiff, in order to the recovery of general damages, should show, by other evidence than mere legal presumption from the fact of publication, that the motives of the defendant were not proper and justifiable. By that decision it was settled that under the act the right of the plaintiff to recover general damages shall not depend on the mere legal presumption of improper and unjustifiable motive, derived from the fact of publishing that which is untrue, but upon the question whether such improper and unjustifiable motive has been proved or disproved as a matter of fact by the evidence ad-

duced for that purpose on the trial; that the legislature did not intend to prescribe any new rule as to the kind or degree of malice, or as to the character or kind of evidence by which the existence of improper and unjustifiable motive should be proved; that all they intended was that the fact of improper and unjustifiable motive should appear in proof, and not be presumed; but whether in proof from the character of the libel, the *res gestæ* or circumstances attending its preparation and publication, or from evidence of other facts tending to show the real motive of the publisher, they did not intend to say; and that upon that construction of the act it was not invalid. To the principles of that decision we adhere. Applying those principles to the case before us, it is obvious that injustice has been done to the plaintiff, and a new trial must be granted.

The defendant was not the conductor of a public journal; nor was he repeating a rumor generally circulated and credited. But he and other respectable persons suspected that illegal votes had been cast at an election. By an arrangement among them he undertook to ascertain whether any such votes were cast, and if so, by whom. His inquiries led him to believe that the plaintiff had been guilty of the offense, and he forthwith drew up an article charging the offense upon the plaintiff by name, and in the most explicit terms, and averring his readiness to substantiate it by legal proof, attached his signature with the formality of a date, and caused or knowingly permitted it to be inserted in one of the principal daily papers of New Haven. The charge it is admitted was untrue, and, under the law as it stood prior to the act of 1855, was unquestionably a libel for which a jury might give exemplary general damages. On the trial below the defendant set up a defense under the act of 1855, which the motion shows to have consisted of three elements:—

1st. That he had reason to believe and did believe the charge to be true.

2nd. That he had no unkind, spiteful or improper feelings, nor any political bias against the plaintiff.

3d. That he drew up the article and permitted it to be pub-

lished with the " good intention " and " laudable purpose " of " eliciting the truth."

The plaintiff asked the court to charge the jury that these facts, if proved, did not excuse the publication complained of. The court did not so charge, but on the other hand did charge that the question in the case was whether the writing and publishing was with good intentions and without malice, or the reverse; that it was a question for the jury; and that the facts and circumstances claimed to be proved by the plaintiff, though proper to be considered by the jury, did not give the plaintiff a right of recovery, as a matter of law, if the jury should find the other facts to be true, as claimed to have been proved by the defendant. In omitting to charge as requested, and charging as he did, we think the court erred.

Neither of the three elements of defense were available to the defendant as a bar to a recovery by the plaintiff, if in the opinion of the jury he had proved a *prima facie* case; and such a *prima facie* case of improper and unjustifiable motive, it may be added, was clearly shown by the character of the publication and the admitted *res gestæ* of the transaction, and the plaintiff was clearly entitled to the instruction prayed for.

The import of the charge moreover, as we think it must naturally have been understood by the jurors, is, that if they found the facts set up in the defense proved, they did constitute a bar to a recovery even if the plaintiff had proved a *prima facie* case; and it can not be sustained under the law of 1855, or any other. That the first element of the defence, belief in the truth of the charge, could not so avail the defendant, was settled in the case of *Moore* v. *Stevenson.* The court there say: " It is not possible that the legislature has said by the statute of 1855 that we are hereafter to hold our good names, (more important than our estates,) at the caprice or credulity of other people, or on the mere belief of any one," &c.

The second element, viz: the fact that the defendant was actuated by no unkindness, ill will, or political bias, was also considered and disposed of in that case. It is not a question in any case, except in relation to the amount of general dam-

ages, whether the defendant entertained feelings of kindness or unkindness, or of political or personal bias towards the plaintiff, but whether his motives were justifiable or unjustifiable in the eye of the law.

The third element or claim is on its face preposterous. The ends intended, as well as the motive, must be proper and justifiable. No man can have a shadow of right, however strongly he may believe that his neighbor has committed a crime, or however kindly he may feel towards him, or however strong his sense of duty to the public may be, to draw up and cause or permit to be published in a newspaper, a circumstantial charge that the offense has been committed, with an offer to prove it, for any purpose of " eliciting the truth." It is a claim of right to do an act which necessarily blasts the character of his neighbor, (so far forth as the commission of the particular crime is calculated to blast it,) in order to have it ascertained whether it ought to be blasted or not ; and nothing could be more unjust, or tend with more certainty to breaches of the peace and bloodshed. The law has provided a legitimate and efficient method of " eliciting the truth " relative to the commission of crime, by giving our informing officers the necessary power to make preliminary and searching inquiry, and to that method every man is bound to resort. Certainly he can not be permitted to make a public charge in a newspaper, for the purpose of provoking a public discussion there, or a general private discussion in the community, under the pretence of " eliciting the truth " for his own benefit, or that of the accused, or for the public good.

It is further claimed that the verdict was for the plaintiff, and substantial justice done, and therefore there should be no new trial. But although the character of the offense charged in the libel was not such as to justify a heavy verdict, it was at least one which entitled the plaintiff to such a verdict as would carry full cost, and presumptively a verdict for substantially nominal damages would not have been rendered if there had been no error in the charge.

A new trial must be advised.

In this opinion the other judges concurred; except DUTTON, J., who having been counsel in the case did not sit.