[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1719
These cases are consolidated actions instituted by the plaintiff, Michael Lyons, and were tried to the court without a jury. The first action (CV-94-0311175S) is against the defendant, Blaise Heid and seeks damages against him for vexatious litigation and defamation. The second action (CV-94-0312019S) is against Charles Nichols and seeks damages against him for defamation. Both of these cases arise from highly charged, bitter political disputes involving the Third Taxing District of the City of Norwalk (Taxing District). The Taxing District is a quasi municipal corporation covering a particular area of Norwalk and is charged with the primary function of operating a public utility plant. The Taxing District consists of electors who are residents within the town. The parties, especially the defendants, have placed heavy emphasis on, and have attempted to draw the court into, the fine minutia of Norwalk's party politics and the alleged political machinations within the Third Taxing District. The court, however, declines this invitation. While the specifics of the Taxing District's political controversies provide the relevant context of background for the plaintiffs claims, they are less material to the facts allegedly supporting the plaintiff's causes of action or to the defendants' defenses.
 1. VEXATIOUS LITIGATION CLAIM AGAINST BLAISE HEID
On November 19, 1991, a group of electors of the Taxing District called a special meeting, which was continued to January 8, 1992, at which time the electors adopted various reform resolutions. The Taxing District commissioners refused to implement these reforms primarily on the ground that the meeting was procedurally improper or unauthorized.
Subsequently, the electors voted to institute a lawsuit against the commissioners. In February 1992, this lawsuit was instituted in the name of the "Third Taxing District of the City of Norwalk."[1] The lawsuit named the following defendants: Michael Lyons, the plaintiff herein, as Chairman of the District C Republican Committee and as attorney for the Taxing District; William Lyons, Jr. (Michael Lyons' father), as General Manager and former commissioner of the Taxing District; and Angelo Santella, James Cunningham and Lorna Church as commissioners of the Taxing District. The first count of this complaint alleged that "improper and ultra vires actions of the commissioners in acting in concert with Michael Lyons have caused financial damage CT Page 1720 to the Taxing District for which they are personally liable." [Exhibit 2, p. 71.] These wrongful acts included the commissioners' payment of health insurance and other benefits to themselves that were not properly identified in annual budgets, and the commissioners failure to produce an audit report and provide an accounting regarding the payment of these benefits. The second count alleged that Michael Lyons conspired with other defendants to give William Lyons an "ultra vires and exorbitant" pension contract. The third count alleged that the defendant commissioners improperly entered into a contract with Michael Lyons as the attorney for the Taxing District.
This Taxing District lawsuit was dismissed on the ground that the electors lacked standing to sue in the name of the Taxing District. Third Taxing District v. Lyons, 35 Conn. App. 795,647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994). The rationale of the court's dismissal was that the Taxing District's commissioners, not the electors, had standing to sue in the name of the district, whereas the electors had standing to institute a taxpayer's action in their own names. Id., 803-04. Thus, although the Taxing District lawsuit was dismissed without the court resolving any of the substantive allegations of wrongdoing, in the instant case, Lyons and Heid have offered evidence on these allegations concerning Lyons' claim of vexatious litigation.
Under the common law, the plaintiff must prove the following in order to prevail on a vexatious litigation claim: want of probable cause, malice and a termination of suit in the plaintiff's favor. Vandersluis v. Weil, 176 Conn. 353, 356,407 A.2d 982 (1978).The plaintiff has also demanded relief under General Statutes § 52-568:
 Any person who commences and prosecutes any civil action or complaint against another, in his name or the name of others, or serves a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause and with a malicious intent unjustly to vex and trouble such person, shall pay him treble damages.
There is no dispute that the Taxing District lawsuit against the plaintiff was dismissed in his favor, and this dismissal satisfies one of the elements of the vexatious litigation claim even though the merits of the case were not adjudicated. See CT Page 1721DeLaurentis v. New Haven, 220 Conn. 225, 251, 597 A.2d 807
(1991).
Although the Taxing District lawsuit was dismissed because the electors did not have standing to sue in the name of the Taxing District, probable cause existed for the electors to believe that they had standing to institute the action in this manner. The Appellate Court found that the electors' position that they had such standing was inconsistent with the overall scheme of the Norwalk City Charter, but the plain language of the charter was unclear on this point and provided some support to the electors' position. See Third Taxing, District v. Lyons,supra, 35 Conn. App. 799-802.
Whether probable cause existed to assert the specific claims against the plaintiff individually is a close question. The claims that Lyons committed wrongful acts making him liable to the Taxing District were never proven, and in retrospect, appear to have been without merit. However, an evaluation of the plaintiffs vexatious litigation claim cannot proceed from a hindsight analysis, but must be based on whether sufficient facts existed when the case was instituted to justify a reasonable person's belief that grounds existed for prosecuting the action. See Kantrowitz v. Clipfel, 22 Conn. Sup. 272, 276-77,168 A.2d 301 (1959).
Probable cause may be defined as the knowledge of facts or information sufficient to justify a belief by a reasonable person that there are reasonable grounds for instituting a lawsuit. A lack of probable cause may allow an inference that malice exists. However, the absence of probable cause cannot be inferred from the fact that malice exists. See Vandersluis v. Weil, supra,176 Conn. 356.
Amidst the volume of information submitted by the parties, the court makes particular note of the following. Prior to the institution of the lawsuit against the plaintiff, The NorwalkHour newspaper published a series of articles concerning the Taxing District and its management. The trial evidence established that these articles and similar information became available to Heid and other electors indicating that Michael Lyons was not only the attorney for the Taxing District, but also that he was chairman of the District C Republican Committee. That committee controlled the nomination process for the two Republican commissioner seats on the Taxing District. Lyons was CT Page 1722 also a former chairman of the Town Council, and that he and his family had historically been controlling figures, and actively involved in, the Taxing District. In short, this information established a level of involvement in the Taxing District's affairs and policies dissimilar to that of the typical outside counsel.
Secondly, prior to the institution of the Taxing District lawsuit, suspicions of improper shenanigans in the Taxing District reached a fever pitch. Certainly. an aura of arrogance and haughtiness was displayed in the management of the district, but there was also information indicating the existence of self-dealing, conflict of interest and perks that were insufficiently documented or authorized. Although most of these concerns did not directly involve the plaintiff and were not raised in the electors' lawsuit, the totality of the circumstances certainly justified the inference that the plaintiff had some involvement in the activities underlying the lawsuit's complaint. Indeed, in April 1992, within two months after the institution of the lawsuit, the Norwalk Police Department issued a lengthy and extensive report concerning its investigation of the numerous allegations involving the Taxing District. The police department's report concluded that the plaintiff, along with others, "did confer or arrange to have conferred certain perks and benefits upon one another or cause certain benefits and perks to be conferred upon others at district expense." (Exhibit A-109.) Although criminal activity was not found, the police department's report indicated that a "civil conspiracy may have existed." This report supports the defendant's position that facts supporting probable cause to institute the lawsuit existed.
The plaintiff emphasizes that the police department, in part through his insistence, revised and supplemented its report; and in the supplemental report, the plaintiff insists that he was completely "exonerated." However, the question of probable cause does not turn on whether the plaintiff was ultimately proven correct, but turns on whether reasonable grounds existed to assert the charges against him. The court concludes that under all the circumstances, probable cause, though weak, nevertheless did exist.
In regard to the element of malice, malice may be described as an intent to vex, harass or annoy the victim and may be expressed or implied. See Bridgeport Hydraulic Co. v. Pearson,139 Conn. 186, 195, 91 A.2d 718 (1952). A person's malicious CT Page 1723 intent is obviously a question of fact based on all the circumstances of the case. In evaluating the evidence and the credibility of the witnesses, the court credits the testimony of defendant Heid and concludes that he did not participate in the litigation against the plaintiff with malicious intent. Heid may have pursued the claims against the plaintiff aggressively, but the court finds that this conduct was not premised on a personal animosity against the plaintiff or on a desire to harass him, but was motivated by a good faith belief that wrongs had been committed. See Bridgeport Hydraulic Co. v. Person, supra,196 Conn. 194-95.
The court further finds that the attorney retained by the electors to institute the Taxing District lawsuit against the plaintiff was aware of the reported facts surrounding the allegations concerning the plaintiff and the Taxing District. The electors' lawsuit proceeded on the basis of the advice from their attorney. and the attorney's advice under the particular circumstances of this case constitutes a complete defense to the plaintiff's vexatious litigation claim. See Vandersluis v. Weil,supra. 176 Conn. 361.
The court rejects the plaintiff's claim that Heid did not rely on the attorney's advice or that the attorney was so biased or prejudiced that any such advice should be disregarded. As recognized by the plaintiff, Heid was a participant and supporter of the litigation, but the decisions to retain counsel and institute litigation were group decisions made pursuant to votes of the Taxing District's electors at electors' meetings. Counsel relied on information provided to him by members of this electors group, which included Heid, and Heid heard and relied on counsel's advice given to this group generally, as well as to him individually. Counsel addressed the electors concerning his views at meetings, and Heid. as a representative of the electors, met with counsel about the case and signed the agreement retaining the attorney. Furthermore, there is no evidence whatsoever that the electors' counsel had any personal interest or bias emanating from his relationship with the plaintiff or from his contingency fee agreement with the electors indicating a compromise of his professional or ethical judgment.
Therefore, judgment shall enter in favor of defendant Heid on the count against him alleging vexatious litigation.[2]
 II. DEFAMATION ACTION AGAINST BLAISE HEID CT Page 1724
A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Dow v. New Haven Independent, Inc. 41 Conn. Sup. 31,36, 549 A.2d 683 (1987), quoting Prosser and Keeton, Torts (5th Ed.) p. 774. An action for defamation requires the publication of a false statement of the defendant and harm to the plaintiff's reputation. See Burns v. Telegram Publishing Co., 89 Conn. 549,94 A. 917 (1915). Moreover, the words must be viewed in the context of the entire statement and the surrounding circumstances. Woodcock v. Journal Publishing Co., 230 Conn. 525,554, 646 A.2d 92 (1994); Yavis v. Sullivan, 137 Conn. 253,259-60, 76 A.2d 99 (1950). Defamation claims are divided into two categories — libel and slander. Generally, libels are written defamations and slanders are oral defamations. SeeCharles Parker Co. v. Silver City Crystal, Co., 146 Conn. 605,610-11, 153 A.2d 451 (1955). Although the plaintiff has referred to negative, oral statements made by Heid and Nichols, the plaintiff during trial and in his post-trial submissions uniformly characterized his claims as being based on "libels per se," or written defamations allegedly made by the defendants. "Whether a published article is libelous per se must be determined upon the face of the article itself. The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose by varied or enlarged by innuendo . . . Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Citation omitted.) Proto v. BridgeportHarold Corporation, 136 Conn. 557, 565-66, 72 A.2d 820 (1950).
The plaintiff claims that Heid published writings that are actionable per se because they either charged him with a crime or injured him in his profession as an attorney. In order for a statement to be libelous per se because it charges a person with a crime, the statement must associate the person with a crime that is a chargeable offense punishable by imprisonment. SeeBattista v. United Illuminating Co., 10 Conn. App. 486, 493, 523, A.2d 1356, cert. denied, 204 Conn. 803, 525, A.2d 1352 (1987).
Alternatively, in order for a statement to be actionable per se because it injures a man in his profession, the statement, on its face, must be clearly directed to or associated with some CT Page 1725 aspect of the person's business or the person's operation of his business; such libel charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business. Proto v. Bridgeport Herald Corporation, supra136 Conn. 556.
The court finds that none of the contested statements made by Heid constitute libel per se. See Plaintiff's Proposed Findings of Fact p. 9, ¶¶ 35-38. In a number of published statements, Heid indicated that the purpose of the electors' lawsuit against the plaintiff and the commissioners was to have the defendants in that action "repay what they improperly took" from the District; he also stated that he expected to collect "a reasonable sum of money from the defendants in the lawsuit." These statements by Heid that the lawsuit's purpose was to acquire repayment of monies "improperly" taken do not on their face allege any criminality. These statements do not indicate whether the funds in question were, for example, taken without proper documentation or authorization, or whether the funds were taken pursuant to behavior that was negligent, intentional or criminal. Similarly, none of the statements on their face indicate that they are specifically associated with the plaintiffs business or profession. Indeed, these statements were published in various newspaper articles that addressed the lawsuit generally, and they do not even specifically identify the plaintiff by name. In short, the only way possible these statements could be viewed as being libelous would be as a result of extrinsic information known by the reader of the article, and therefore, they cannot be viewed as being libelous per se. See Battista v. UnitedIlluminating Co., supra. 10 Conn. App. 491 (as compared to libel per se. a "libel per quad is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication"). Id.
The plaintiff also takes issue with a statement made by the defendant Heid at the May 1992, electors meeting. At this meeting, Heid described the April 1992, police report as concluding that the questionable activities in the Taxing District "couldn't be completely shown to be criminal." The plaintiffs claim that this statement is defamatory per se is clearly frivolous. An oral statement which essentially states that the police could not identify sufficient evidence to establish criminal activity is obviously not an assertion that the plaintiff himself committed a criminal act. CT Page 1726
Additionally, the court finds that the plaintiff was either a "public official" or a "public figure" during all times relevant to these actions. The plaintiff essentially concedes that he was a public figure through November 1992, when he left the position as counsel for the Taxing District (Plaintiff's Trial Memorandum, p. 11, N.8), but thereafter he also remained politically active in the Taxing District, particularly through the Republican Committee. A "public figure" is a person who has thrust himself "to the forefront of particular controversies in order to influence the resolutions of the issues involved," and has thereby invited attention and comment. Gertz v. Robert Welch,Inc., 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Because the plaintiff is a public figure, he must prove that defendant Heid published the statements with "actual malice."Brown v. K.N.D, Corp., 205 Conn. 8. 9, 529 A.2d 1292 (1987); seealso Milkovich v. Lorain Journal, 497 U.S. 1, 110 S.Ct. 2659,111 L.Ed.2d 1 (1990) (both public officials and public figures have the burden of showing malice by clear and convincing evidence). "Actual malice" in this constitutional context is not ill will or hatred, but is established when the defendant acts in reckless disregard of the truth of the statement or with knowledge of its falsity. See Holbrook v. Casazza, 204 Conn. 336,346, 528 A.2d 774, cert. denied, 48 U.S. 1006, 108 S.Ct. 699,98 L.Ed.2d 651 (1988) (negligent defamation about a public official remains constitutionally protected speech). Actual malice must be proven by clear and convincing evidence. Brown v. K.N.D. Corp.,supra, 205 Conn. 10. The court finds that the plaintiff has failed to meet his burden of showing by clear and convincing evidence that the defendant Heid acted with actual malice as defined under established case law.
As the plaintiff has premised his defamation claims solely on the doctrine of libel per se, his defamation count against the defendant Heid must fail.
 III. DEFAMATION ACTION AGAINST CHARLES NICHOLS
The plaintiff claims that the defendant Nichols also wrote statements about him that are libelous per se. Plaintiff's Trial Memorandum, pp. 10-15. Most of the statements appeared in letters written to the editors of newspapers circulated in Norwalk. The following statements are those being contested by the plaintiff, and as addressed below, the court only finds that one of the statements is libelous per se. As previously stated, to be CT Page 1727 actionable per se, a statement must be libelous on its face, and must not require that the reader know or obtain extrinsic or unstated facts to appreciate the statement's defamatory nature. See Battista v. United Illuminating, supra, 10 Conn. App. 491. In order to determine whether particular words are defamatory, the words must be evaluated on the basis of the entire statement and circumstances. Per se defamation, however, cannot be established through implication or innuendo. See Proto v. Bridgeport HeraldCorp., supra, 136 Conn. 565-66; Herman v. Post, 98 Conn. 792,120 A.2d 606 (1923); Yakavicze v. Valentukevicious, 84 Conn. 350,80 A. 94 (1911).
First, the plaintiff contests statements made by Nichols associating him with a "corrupt" or "greedy" political group:
a. In May 1992, Nichols wrote a letter to a newspaper concerning the deaths of two women who had been involved in East Norwalk politics. This letter was published in the "Letters" section of the paper and stated that "[b]oth ladies opposed a corrupt and long established political power in East Norwalk." The plaintiff is sufficiently identified in the article to allow a reader to reasonably conclude that the plaintiff is being associated with this "corrupt" political power. (Ex. A-14.)
b. In a letter published in a newspaper on July 29 1993, Nichols stated "we ask everyone who loves this city and who wants to protect it from the greedy and corrupt to get involved." This letter was written in support of Nichols' wife as the endorsed Republican nominee to run in an election for a vacant commissioner seat of the Taxing District. The "Lyons regime" or the "Lyons people" are referred to as the group of Republicans opposing her nomination. (Ex. A-7.)
c. On January 1, 1994, a newspaper published a "letter to the editor" from Nichols which again used the word "corruption" in connection with politicians associated with Lyons:
 At the district caucus. John Lombardi, a man who regularly uses these columns to apologize for Lyons, wrapped himself with police office (who should know better) and folks from the Nathan Hale district who have no idea about the corruption a few miles south. Lombardi knows his smokescreen is to call his group a "reform slate."
CT Page 1728 This letter was also related to an upcoming election in the Taxing District and was encouraging electors to vote for a particular slate of Republican candidates. (Ex. A-8.)
Under the circumstances presented in this case, Nichols' reference to Lyons, a political opponent, as "corrupt" or "greedy," during hotly contested and contentious political struggles "are examples of rhetorical hyperbole of which no reader could have thought . . . were charging [the plaintiff] with commission of a criminal offense." Lizotte v. Welker,45 Conn. Sup. 217, 231, aff'd. 244 Conn. 156, (1998), quotingGreenbolt Cooperative Publishing Association v. Bresler,398 U.S. 6, 14, 90 S.Ct. 1537. 26 L.Ed.2d 6 (1970). In Lizotte v.Welker, the defendant stated that the plaintiff, a private person, was involved in "secret, illegal and corrupt deals." There, the court ruled that the statements were not libelous and this holding is clearly applicable here.
The plaintiff also contests the following statements suggesting that Lyons had some involvement with or knowledge about money missing from the Taxing District:
a. In a letter to the editor published in a newspaper on February 4, 1994, Nichols accuses Lyons of relying on "unsubstantiated hallucinations of your lackey, Lombardi," to take legal action against a woman on the District C Committee. In this letter, Nichols says the following: "What's the story, Michael? Are we getting so close to your beloved Electrical Department that we might find out where all the money went." (Ex. A-6.)
b. Nichols wrote another letter to the editor in July 1, 1995. The alleged libelous statement is highlighted in the following paragraph so that its context my be exposed:
 The latest bit of claptrap is a reception with refreshments, if you will, to celebrate "10 years without an electrical rate increase!" Once again, they will entertain their friends, at the ratepayers' expense. Now, it doesn't take a lot of brains to figure out that if rates have been the same for ten years, and that since everything else has gotten more expensive, either the service is being cut or they charged too much in 1985. Since the service seems to be the same, what happened to all the extra money theyCT Page 1729 collected for the last ten years? We didn't get it. Who did?
 I ask again, where's the money, fellas? Is that why you're fighting so hard? And, if anyone believes Michael Lyons is out of politics and that all in East Norwalk is straightened out, I know where they can purchase some nice oceanfront property in Nebraska. (Ex. A-37.)
Contrary to the plaintiff's position, neither of these statements regarding missing money accuses the plaintiff with stealing money or committing a crime. These statements on their face are not libelous per se. See Yakavicze v. Valentukevicious,supra, 84 Conn. 350 (the court will not find through innuendo that allegations that a person is a cheat and a thief are per se defamations charging the person with a crime).
The plaintiff also claims that another group of statements charges him with committing crimes, but again, none of these statements on their face are libelous per se.
a. In the May 1992, letter discussed previously, Nichols also makes the following statement: "A public servant has become a buffoon in the eyes of the public and his career is over." In this particular letter, there is nothing in the text itself informing the reader that this statement is even referring to the plaintiff. However, the statement does not charge the plaintiff with a crime, or specifically attack his business or profession.
b. In a letter to a John Lombardi, Nichols makes the following statement and the alleged libel is again highlighted:
 First of all, I have no wish "to control" the Electrical Department, Had Lyons and his cronies come forward with the information the ratepayers requested in 1991; had they not stonewalled and continued to stonewall every request for information; had they not continued to bully and harass the ratepayers, there would be no dispute today and they would be running the Department without any opposition from me. Unfortunately, this has not been the case and it is our opinion that they are hiding something that is so incriminating, so big, that they will stop at nothing to protect it. Theories run wild as imaginationsCT Page 1730 take over. Needless to say, the majority of the people involved in our crusade have speculated about long prison terms for some of those involved!
(Ex. 43.)
Again, there is nothing in this statement specifically identifying Lyons as the person being referred to in the "prison term" comment. Furthermore, this statement is made in the form of a rhetorical comment about people's speculations and simply does not assert that Lyons has committed a criminal offense.
c. Similarly, the plaintiff places significant emphasis on the following comments stated in another letter to Lombardi:
 The issue here is not whether Michael Lyons is a master embezzler and a political manipulator or merely a small time crook with a bad hairpiece. (Ex A-3.)
Again, this statement, on its face, does not charge the plaintiff with committing any crime. When considered in context, any reasonable reader of the letter would view the statement as an exaggerated, rhetorical comment indicating that criminality isnot the issue: name calling and "rhetorical hyperbole cannot be the basis for liability." Woodcock v. Journal Publishing Co.,supra, 230 Conn. 555.
d. In another "letter for the editor" published in February 1992, Nichols said the following:
 Truth is never served if disputes are tried in the media. Yet, is truth served now? My people have been harassed, threatened, told to get off our ticket, and accused of having ulterior motives when they only want what you want for our district and our city.
 I have discussed these crimes with responsible people in Norwalk government and have requested the cooperation of the Connecticut Attorney General and will, if necessary, call for a federal investigation if these heavy-handed, illegal, and frightening abuses reoccur, even one more time! (Ex. A-112.)
CT Page 1731 Prior to this statement, the article discusses a rival political slate put together by the plaintiff in opposition to the slate supported by Nichols. The letter suggests that members or supporters of the plaintiff's slate are committing the alleged threats and harassments. However, there is no allegation either explicitly or implicitly, that Lyons himself is committing these acts or that the acts are being done with his knowledge or direction. The plaintiffs claim to the contrary is clearly meritless.
The remaining statement presents different difficulties from the preceding ones. In a letter published in a newspaper on September 11, 1996, Nichols describes an event in which a Dennis Santella received a $100,000 per year position as a clerk-of-the works for Norwalk school construction projects. (Ex. A-32.) Santella was also one of the two Republican commissioners on the Taxing District which consists of three members. Nichols alleges that Santella will "repay Lyons for this cash windfall" received from the clerk-of-the-works position by resigning his membership in the Republican party. This resignation would allow Lyons to run another Republican candidate in an upcoming election for a vacant commissioner seat of the Taxing District commission. If Santella did not resign, his presence with the other Republican commissioner would prevent a Republican from running as a candidate for the vacant commissioner seat because of minority representation rules. Stated differently, a fair reading of the letter charges that Lyons was involved with the hiring of Santella for the clerk-of-the-works position with the understanding that Santella would resign from the Republican party, which resignation would in turn allow Lyons to run another of his supporters for the vacant commission seat. Nichols describes in the letter:
 "Santella gets all our money. In return, Michael Lyons can keep his electric department." (A-32.)[3]
The plaintiff demanded a retraction of this statement claiming that the letter charged the plaintiff with committing a crime in violation of General Statutes § 9-333x(6), and was therefore libelous per se. (A-47.)[4] In response, Nichols wrote another letter to the editor explaining his allegation, but he did not retract the charge. (Ex. 27); see also General Statutes § 52-237 (providing that if a retraction is not demanded, a plaintiff in a libel action must prove malice or actual damages in order to recover damages). In this letter, Nichols questions CT Page 1732 whether the conduct prohibited by § 9-333x(6) could seriously be considered criminal in today's political environment, and insists that he did not in fact call Lyons a "crook," and therefore has nothing to retract. In order to be a legally effective retraction, the retraction must represent an unequivocal withdrawal of the libelous charge and a clear effort to undo the damage done by the libel. See Lawrence v. BauerPublishing Printing LTD, 423 A.2d 655, 661 (N.J.Super. A.D), rev. in part, 446 A.2d 469, cert. denied, 459 U.S. 999 (1980). Nichols' explanation of his charge clearly does not constitute a legally sufficient retraction.
The court finds that this statement published on September 11, 1996, is libelous per se because on its face it falsely charged the plaintiff with the commission of a crime as described under General Statutes § 9-333x(6). Under § 9-333x(6), a promise by a noncandidate to give a public benefit to someone to promote another person's election is an election crime: such conduct is essentially what Nichols accused Lyons of engaging in by alleging that Lyons was involved in acquiring public employment for Santella as part of a scheme to promote the election of another Republican to a vacant commission seat.
Nichols states that he made the statement to discourage a possible political maneuver, but he was also motivated by ill will toward Lyons. Their political rivalry had advanced to such a personal animosity that Nichols not only believed that Lyons would do virtually anything to maintain control over the Taxing District, but Nichols was also willing to falsely and wilfully accuse Lyons of election fraud.
The court also finds that the plaintiff has proven by clear and convincing evidence that Nichols made this statement with malice in fact, as the statement was made with the reckless disregard for the truth of the allegation. Nichols had no facts or information whatsoever to support Lyons' actual involvement with Santella's job, or with any agreement that Santella would resign from the Republican party. He simply assumed that Lyons was involved and hypothesized about what this involvement concerned. Nichols admits that he was advancing this scenario as one possible explanation of the situation and wrote the letter as an effort to discourage this possible political maneuver. However, Nichols' letter does not describe the scenario as a "possible" explanation. He affirmatively asserts that this "quid pro quo" existed in fact, and as a result, charged that a crime CT Page 1733 had been committed.
In regard to the recovery of damages against Nichols for this September 1996, statement, one commentator has noted that the determination of damages in a per se defamation case is an extremely nebulous endeavor, Wright, Tort Remedies in Connecticut, p. 515 (3rd Ed.), and this determination is particularly treacherous in this case. According to the plaintiff's evidence, the primary harm to his reputation and emotional well being took place in 1992, years before the September 1996, statement. For example, the plaintiff explained that the most serious and hurtful events took place during the 1992, electors' meetings. Indeed, this libelous statement was made years after this action was instituted. The plaintiff also testified that his reputation and feelings were injured in innumerable ways between 1992 and 1996: through other statements made by the defendants; statements made by people other than the defendants; by newspaper articles and editorials: by comments made during attorney grievance proceedings that involved privileged communications; and by comments made in political debates and forums that must be viewed as constitutionally protected speech. See Monitor Patriot Co. v. Roy, 401 U.S. 265
(1971); New York Times v. Sullivan, 376 U.S. 254 (1964): Whitneyv. California, 274 U.S. 357 (1927).
The court, however, has found that none of the statements made by the defendants during the 1992 and 1994 time period were libelous per se, and any alleged injuries caused by libels made by other people are not at issue here because those people are not parties to this action. Under cross-examination, the plaintiff admitted that connecting harm to his reputation to any particular statement made by the defendants or anyone else would be a "guesstimate" at best. Specifically in regard to the 1996 statement charging him with an election crime, the plaintiff has not offered any evidence that this one specific statement had any actual, appreciable effect on his reputation, particularly since this statement came years after the most serious political and personal attacks against him had already been made. Furthermore, the plaintiff has not alleged or proved, any special damages or actual, pecuniary losses.
The plaintiff maintains that none of these issues in any way impedes his recovery of substantial general damages, and that an award of nominal damages would be error. The plaintiff argues that his inability to relate any damage to his reputation to any CT Page 1734 particular source is immaterial. The plaintiff reasons that because in a per se defamation case he is not obligated to plead or prove his injury, he also is not obligated to prove his damages or other vise "allocate" his damages in order to recover them. See Plaintiff's Trial Memorandum, p. 10 n. 7. In short, the plaintiff insists that in a per se defamation case, general damages are conclusively presumed, nominal damages are precluded and the doctrine of proximate cause is entirely inapplicable.
As discussed further below, the court rejects the plaintiff's position that Connecticut case law has adopted a "conclusive" presumption of general damages as advanced by the plaintiff that does not involve the doctrine of proximate cause and that precludes the award of nominal damages. Moreover, on the facts of this case, the plaintiffs argument raises serious constitutional concerns militating against adoption of the plaintiffs position.
In some respects, the plaintiff's argument appears to be consistent with the general common law position adopted in the majority of the states: "if the defamatory words are actionable per se, general damages will be presumed and hence general . . . damages need not be proven in order to warrant recovery." 53 C.J.S. § 198 see also 50 Am. Jur.2nd, [Am.Jur.2d], §§ 376, 378 ("[g]eneral damages to a person's reputation are presumed to follow from the imputation of a crime").
The plaintiff also correctly states that in a libel per se action, the general rule is that [w]hen the defamatory words are actionable per se, the law conclusively presumes the existence ofinjury to the plaintiffs reputation. He is required neither to plead nor prove it." (Emphasis added.) Urban v. Hartford Gas Co.,139 Conn. 301, 308, 93 A.2d 292 (1952). However, the pronoun it
in the Urban standard refers back to its antecedent injury; there is no mention of damages, anywhere, in the foregoing rule. Thus, a reasonable construction of this statement is that the law only presumes an injury to the plaintiff's reputation, and does not presume damages.
There is a significant legal difference between the words "injury" and "damages." "Although the words, `damage,' `damages,' and `injury,' are sometimes referred to loosely as synonymous, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damages suffered. 22 CT Page 1735 Am. Jur.2d [Damages] § 1." DiNapoli v. Cooke,43 Conn. App. 419, 427-28, 682 A.2d 603, cert. denied, 239 Conn. 951,239 A.2d 124 (1996).
The law could very well presume an injury to the plaintiffs reputation, not because the plaintiff has actually been damaged, but rather because the libelous statement has invaded the plaintiff's clear legal right not to be defamed. Therefore, although reputation injury may be conclusively presumed in libel per se cases, the damages flowing therefrom may not be conclusively presumed. Certainly, this interpretation contrasts with statements describing the general common law rule that "damages" are presumed and need not be proven. See, e.g. White v.Chicago, Burlington and Quincy Railroad, 417 F.2d 949 (1969); see also 53 C.J.S. Sec. 198.
The court conducted a rather exhaustive search in order to determine whether Connecticut has adopted the general common law position that "damages" are conclusively presumed, or whether Connecticut's rule only presumes the existence of an "injury." The court, however, was not able to reach a definitive conclusion.
In 1862, the Connecticut Supreme Court articulated the basic rule underlying an award in a libel per se action, and also set out the distinction between general damages and special damages.Hotchkiss v. Porter, 30 Conn. 414, 22 A. 535 (1862). The court stated: "Every person who is entitled to the protection of our laws, is entitled to protection against injuries to his reputation, and to redress for them when committed." Id., 418. As such, "the remedy in a court of justice, which is thus guaranteed to every person for an injury to his reputation . . . is twofold — the recovery Superior Court of special damages and general damages; special damages for every legal and natural consequence directly injurious in a pecuniary point of view . . . and general damages, where no special injury has accrued, for the loss of standing and character, and the discomfort, humiliation and unhappiness which such loss occasions." (Emphasis added.) Id., 419. Thus, although the court did not directly address whether the law presumes damages or an injury in a libel per se case, the court's language intimates that a person is to be compensated only when an injury to their reputation or mental well being arises from a libelous statement.
Twenty seven years later, however, the Connecticut Supreme CT Page 1736 Court tacitly acknowledged the general common law presumption of presumed damages. The Court, in affirming the lower court's decision, found no error with the trial court's instruction that the plaintiff claims [only] general damages, and if you find that this was a libel . . . the law presumes, without proof, that there was some damage, and it is for you to say how much, taking into account all the circumstances that have been provide in this case." Wynne v. Parsons, 57 Conn. 73, 83, 17 A. 362 (1889). Therefore, it appears that the Court, at the time, had adopted the general common law view that the presumption in libel per se cases extends to damages, and not the plaintiffs injury. Furthermore, it would appear that the general damages were recoverable without any proof of causation.
Yet, despite the Court's tacit approval of the general common law presumption in Wynne v. Parsons, the Connecticut Supreme Court later held in 1905, that the presumption applies to "injuries," rather than "damages": "the damages recoverable [by the plaintiff] should . . . have been limited to a sum sufficient to compensate the plaintiff for those injuries which the law presumed as the natural and proximate results of the publication;Wynne v. Parsons. 57 Conn. 73, 17 A. 362; such as his damaged reputation [and] his injured feelings . . ." (Emphasis added.)Hassett v. Carroll, 85 Conn. 23, 37-38, 81 Alt. 1013 (1911). The court's reliance on Wynne v. Parsons, creates some ambiguity and again suggests that the two cases are using the words injuries" and "damages" interchangeably.
As previously stated, in Urban v. Hartford Gas Co., supra,139 Conn. 301, the Court stated that the law presumes the existence of an injury" in a libel per se case. In support of its proposition, the Court cited two other Connecticut Supreme Court cases. The first case of Craney v. Donovan, 92 Conn. 236, 238,102 A. 640 (1917), is only marginally instructive. That case predominantly discusses the effect of malice in fact on the amount of damages awarded, but the Court makes the following general statements: `The law presumes some damage from the use of defamatory words, and the person slandered is entitled to recover damages for all the injury done to his reputation, and his feelings, and all the mental suffering, which are the proximate result of the defamation." Id. 238. Craney's reference to "some" damages could certainly be either general damages or nominal damages, and the case clearly indicates the applicability of proximate cause.
CT Page 1737 The second case cited by Urban, Ventresca v. Kissner,105 Conn. 533, 136A. 90 (1927), however, states that a plaintiff is "entitled to recover, without proof of special damages, substantial compensation for such injury to her reputation and feelings and for her mental suffering, as it is natural to presume she suffered from the accusation." (Emphasis added) Id., 537. The Urban decision was also a culmination of many other decisions which support the proposition that in a libel per se case the law presumes the existence of an injury to the plaintiff, and that the plaintiff must prove causation to be entitled to substantial general damages. See generally Proto v.Bridgeport Herald Corporation, supra, 136 Conn. 571: Sandora v.Times Co. 113 Conn. 574, 581, 155 A. 819 (1931); Yavis v.Sullivan, 137 Conn. 253, 262-63, 76 A.2d 99 (1950).
The most recent case on this point is the Supreme Court case of Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,234 Conn. 1, 35, 662 A.2d 89 (1995). There the Court, reciting the language in Urban v. Hartford Gas, Co., stated that the law only presumes the existence of an injury to the reputation. The court further stated, quoting Proto v. Bridgeport Herald Corp., that the plaintiff" is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him." (Emphasis added.) Id. 571.
Yet, in the relatively recent ruling of Miles v. Perry,11 Conn. App. 584, 602-03, 529 A.2d 199 (1987), the Appellate Court held that "damages" are presumed in per se defamation actions, relying on the case Battista v. United Illuminating Co., supra,10 Conn. App. 491, which in contrast holds that "injuries" are presumed in per se defamation actions.
Thus, the court is faced with the task of interpreting this multitude of cases in a reconciling and consistent manner. The most reasonable view is that the appellate courts have used the words "injury" and "damages" synonymously, but have done so with the intent of adopting the general rule as follows. When defamatory words are actionable per se, the law conclusively presumes the existence of damages without pleading or proof. General damages may be recovered that are the proximate result of the publication, and nominal damages shall be awarded when proximate cause is not shown or when proof of damages is not established
Contrary to the plaintiff's position, the Connecticut cases CT Page 1738 are numerous and uniform in holding that the doctrine of proximate cause plays a role in determining the amount of damages in a defamation per se case. "The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humilation and mental suffering which thelibel caused hurl" (Emphasis added.) Battista v. UnitedIlluminating Co., supra, 10 Conn. App. 486, citing Urban v.Hartford Gas Co., supra. 139 Conn. 308; see also Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 35
(general damages recoverable from which libel caused him); Protov. Bridgeport Herald Corporation, supra, 136 Conn. 571 (plaintiff entitled to recover general damages from which "libel caused him"); Sandora v. Times Co., supra, 113 Conn. 581 (plaintiff limited to damages that were "proximate result" of publication);Hotchkiss v. Porter, supra, 30 Conn. 414 (general damages, where no special injury has accrued, for the loss of standing and character, and the discomfort, humiliation and unhappiness which such loss occasions).
Although damages may be presumed, the extent of the harm and the amount of the damages are not presumed. Yavis v. Sullivan,supra. 137 Conn. 262-63; Wanamoder v. Lewis, 173 F.2d 126 (D.C.Colo. 1959). On this point, the Supreme Court's decision inYavis v. Sullivan, supra, is both illustrative and controlling. In Yavis, the plaintiff recovered damages against the defendant on the ground that the defendant had made per se defamations against him. The Supreme Court held that the damages awarded by the jury could not stand and had to be reduced because the award was only in part based on the defamation and was substantially based on injuries to the plaintiff s reputation which were not caused by the defamation: "[i]t is apparent that the jury awarded damages against the defendant in large measure because of injuries to reputation and hurt feelings which flowed fromconduct by her which was not part of the slander alleged andproved. Such injuries were not legitimate elements of the damage for the specific slanders charged." (Emphasis added.) Id., at 262-63. As applied here, Lyons has failed to show by a preponderance of the evidence what injuries to his reputation specifically flowed from Nichols' libelous statement, and contrary to Lyons' position, Yavis establishes that this is a burden that he is required to meet in order to recover general damages.
Additionally, it is a matter of well established law that nominal damages may be awarded in per se defamation cases, and on CT Page 1739 the basis of the evidence in this case, the court finds that an award of nominal damages is appropriate. See generally, 50 Am.Jur.2d. Libel and Slander, § 378. The plaintiff's reliance onBattista v. United Illuminating Co. supra, to support his position that nominal damages cannot by awarded in a per se defamation case is unavailing. A careful reading of Battista indicates that the trial court concluded that the plaintiff in the libel per se case had not shown any actual or special damages. As a result, the trial court instructed the jury that it could only award nominal damages. The Appellate Court reversed. Because general damages are recoverable in a libel per se case in the absence of special damages, an instruction limiting the jury to an award of nominal damages was erroneous. Battista v. UnitedIlluminating Co. supra, 10 Conn. App. 490-91. In other words, whether general damages or nominal damages are recoverable is an issue to be determined by the trier of fact, and an instruction to a jury that it may only award nominal damages is error. However, the trier of fact is not precluded from awarding nominal damages when the plaintiff has not proven a causal connection between the libelous statement and any damages suffered.
Thus, the court finds that the plaintiff has failed to provide any evidence beyond mere guess and speculation about the extent of any damage to his reputation that was proximately caused by the September 1996, statement. As previously stated, the plaintiff testified that his reputation and feelings were hurt by many undifferentiated factors, including privileged comments on which no recovery may be based. According to the plaintiff's own testimony, any tarnish to his reputation was substantially affected between 1992 and 1994, and he offered no evidence that specifically connected the September 1996 statement to any harm he may have suffered. See Yavis v. Sullivan, supra.137 Conn. 262-63.
As the plaintiff has not provided any proof concerning the extent of the harm caused by the libel, and has not provided the court with any reasonable means to determine the damages, the court finds that only nominal damages are warranted. "In a case where a [claimant's] clear legal right has been invaded he is entitled to at least nominal damages." Letsch v. Slady,145 Conn. 401, 402-03, 143 A.2d 642 (1958). Therefore, in the absence of proof of an actual loss, the court awards the plaintiff $100 in nominal damages against the defendant Nichols for the invasion of the plaintiff's legal right not to be defamed. CT Page 1740
Additionally, plaintiff's argument that substantial general damages should be conclusively presumed and awarded in this case and that nominal damages should not be awarded raises constitutional concerns.
The United States Supreme Court's case of Gertz v. Robert Welch,Inc. supra. 418 U.S. 386, has created substantial debate about the continued ability of state law to conclusively presume damages in defamation cases. See e.g., Dun Bradstreet, Inc. v.Greenmoss Builders, Inc. 472 U.S. 752, 105 S.Ct. 2939,86 L.Ed.2d 593 (1985); see generally, 36 ALR 4th 807. Presently, the prevailing view is that in a case involving a public figure or matters of public concern, a presumption of damages is permissible when actual malice exists in the form of knowledge of falsity or reckless disregard for the truth. See Dun Bradstreet, Inc. v. Greenmoss Builders, Inc., supra,472 U.S. 752. See also Ryan v. Herald Ass'n. Inc., 566 A.2d 1316 (Vt. 1989).
Despite the court's finding that Nichols acted with constitutional malice, serious constitutional issues would nevertheless be raised by an award of substantial general damages based on a conclusive presumption of general damages because of the numerous, undifferentiated sources causing damage to the plaintiffs reputation and feelings. Particularly in cases involving public figures and statements of public or political concern, the court must proceed carefully to ensure that damages are narrowly awarded on the basis of the defamatory speech, and not on the basis of constitutionally protected speech. See generally, Gertz v. Robert Welch, Inc., supra, 418 U.S. 386;Monitor Patriot Co. v. Roy, supra. 401 U.S. 265. Awarding damages in such cases without any regard to whether the injury flows from libelous statements or privileged statements could have a chilling effect on free speech and political expression because an award of damages in a defamation case cannot be wholly or partially based on speech subject to constitutional protection unless a high standard of proof is met. See generally, New YorkTimes v. Sullivan, 376 U.S. 2.54, 84 S.Ct. 710, 11 L.Ed.2d 686
(1964).
As previously discussed, the plaintiff's evidence establishes that his reputation was hurt not only by privileged statements made as part of attorney grievance proceedings, but also by statements made in political forums and during political debates which must be viewed as constitutionally protected speech. See CT Page 1741 generally, Monitor Patriot Co. v. Roy, supra, 401 U.S. 274-75. Thus on these particular facts, the plaintiffs recovery of substantial general damages based on a presumption of damages and without any proven connection between the libel and the reputation damage, would not allow any clear confidence that damages are being awarded for harm solely caused by defamatory speech and not by privileged speech. Such a consequence clearly militates against acceptance of the plaintiffs position as applied to the facts of this specific case.
The court bifurcated the issue of damages so that the plaintiff's evidence concerning the amount of any punitive damages would be heard if the court made factual findings from the evidence in chief on which such damages could be based. The court must proceed to consider the issue of punitive damages since the court has found that defendant Nichols made the libelous statement both with malicious ill will and with reckless disregard about the truthfulness of the statement. The court will reserve decision about the appropriateness of punitive damages, and further proceedings will be scheduled on whether punitive damages are recoverable, and if so, in what amount.
 CONCLUSION
Therefore, for all the foregoing reasons, judgment shall enter against the plaintiff Michael Lyons and in favor of the defendant Blaise Heid in case number CV-94-031175S. In case number CV-94-031209S, nominal damages in the amount of $100 are awarded in favor of the plaintiff Michael Lyons and against the defendant Charles Nichols, and the Lyons v. Nichols case shall be scheduled for further proceedings on the issue of punitive damages.
Stevens, J.